# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2014 Term

_____

No. 13-1264

_____

**FILED**

**November 25, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent**

**v.**

**DANIEL L. HERBERT,**
**Defendant Below, Petitioner**

**AND**

_____

No. 13-0962

_____

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent**

**v.**

**DANIEL L. HERBERT,**
**Defendant Below, Petitioner**

_____

**Appeals from the Circuit Court of Berkeley County**
**The Honorable John C. Yoder, Judge**
**Criminal Action No. 12-F-204**

**AFFIRMED**

_____

**Submitted: October 1, 2014**
**Filed: November 25, 2014**

**Ben J. Crawley-Woods, Esq.**
**Martinsburg, West Virginia**
**Counsel for the Petitioner in No. 13-1264**

**Matthew L. Harvey, Esq.**
**Taylor and Harvey**
**Martinsburg, West Virginia**
**Counsel for Petitioner in No. 13-0962**

**Cheryl K. Saville, Esq.**
**Assistant Prosecuting Attorney**
**Martinsburg, West Virginia**
**Counsel for the Respondent**

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**JUSTICE LOUGHRY concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.**

**SYLLABUS BY THE COURT**

1.     "The constitutional right against self-incrimination does not extend to prevent the physical appearance of a person at trial."  Syl. Pt. 2, *State v. Harman*, 165 W.Va. 494, 270 S.E.2d 146 (1980).

2.     In a criminal trial, when a non-party witness intends to invoke the constitutional privilege against self-incrimination, the trial court shall require the witness to invoke the privilege in the presence of the jury.  The constitutional privilege against self-incrimination may only be invoked when a witness is asked a potentially incriminating question.  U.S. CONST. amend V.; *W.VA. CONST.* art III, § 5.  To the extent *State v. Whitt*, 220 W.Va. 685, 649 S.E.2d 258 (2007), is inconsistent with this holding, it is hereby modified.

3.     In a criminal trial, where a non-party witness invokes the constitutional privilege against self-incrimination or otherwise fails to testify, a party is not entitled to an instruction allowing the jury to infer that the testimony would be favorable or unfavorable to either the defendant or the prosecution.  To the extent *State v. Whitt*, 220 W.Va. 685, 649 S.E.2d 258 (2007), is inconsistent with this holding, it is hereby modified.

4.     When a defendant is charged with a crime in which a prior conviction is an *essential element* of the current crime charged (*e.g.* being a felon in possession of a firearm under *W.VA. CODE* § 61-7-7(b)(1) [2008]), and *does not stipulate* to having been previously convicted of a crime, the trial court shall not bifurcate the prior

i

conviction from the remaining elements of the crime charged. To the extent *State v. McCraine*, 214 W.Va. 188, 588 S.E.2d 177 (2003), is inconsistent with this holding, it is hereby overruled.

5.     When a defendant is charged with a crime in which a prior conviction is an *essential element* of the current crime charged (*e.g.* being a felon in possession of a firearm under *W.VA. CODE* § 61-7-7(b)(1) [2008]), and *stipulates* to having been previously convicted of a crime, the trial court shall inform the jury that the defendant stipulated to the prior conviction. The jury shall be informed that the defendant was convicted of a prior felony or misdemeanor, but shall otherwise not be informed of the name or nature of the defendant's prior convictions. To the extent *State v. Dews*, 209 W.Va. 500, 549 S.E.2d 694 (2001), is inconsistent with this holding, it is hereby modified.

6.     When a defendant is charged with a crime in which a prior conviction merely *enhances the penalty* of the offense currently charged and *does not stipulate* to having been previously convicted of a crime, the defendant may request that the trial court bifurcate the issue of the prior conviction from that of the underlying charge and hold separate jury trials for both matters. The decision of whether to bifurcate these issues is within the discretion of the trial court. In exercising this discretion, a trial court should hold a hearing for the purpose of determining whether the defendant has a prima facie challenge to the legitimacy of the prior conviction. At the hearing, the defendant may proffer evidence that the prior conviction does not exist or is otherwise invalid. If the trial court is satisfied that the defendant's challenge has merit, then a

bifurcated proceeding should be permitted. However, should the trial court determine that the defendant's claim lacks any relevant and sufficient evidentiary support, bifurcation should be denied and a unitary trial held. To the extent *State v. McCraine*, 214 W.Va. 188, 588 S.E.2d 177 (2003), is inconsistent with this holding, it is hereby overruled.

7. When a defendant *stipulates* to a prior conviction that merely *enhances the penalty* for the current charge, the jury shall not be informed of the prior conviction.

**Justice Ketchum:**

The Defendant, Daniel L. Herbert, appeals his convictions arising from deliberately shooting a man twice in the back and, in the process, accidentally shooting an eight-year-old girl.

The Defendant's primary argument is that the circuit court violated his constitutional right to compulsory process for obtaining witnesses in his favor. At trial, the Defendant claimed he acted in self-defense, but the circuit court refused to require a victim, the alleged aggressor, to take the stand in the jury's presence on the ground that the witness refused to testify and that he was a security risk. The Defendant also argues that the count alleging he was a felon illegally in possession of a firearm should have been bifurcated for trial. He contends the circuit court erred by refusing to bifurcate the issue of whether he was previously convicted of a felony crime of violence against another person from the issue of whether he carried a firearm.

Based upon our review, we find no reversible error and affirm the Defendant's convictions.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

On July 4, 2012, an estimated 2,000 people attended a celebration at War Memorial Park in Martinsburg, West Virginia. The Defendant and one of the gunshot victims, Gabriel McGuire, were acquaintances who attended the celebration. Their interaction began as conversation.

1

The dialogue between the Defendant and McGuire deteriorated. McGuire momentarily flashed a folding knife with a blade measuring about four to five inches. However, he folded the knife, put it back in his pocket, and resumed his conversation with the Defendant.

About thirty to forty-five seconds later, the Defendant shot once or twice at McGuire with a .38 caliber revolver but did not initially hit McGuire. McGuire ran away, but the Defendant chased him and continued to shoot. The Defendant ultimately shot McGuire twice in the back. In the process, he also shot and wounded a bystander, an eight-year-old girl. The Defendant fled on foot until police officers caught him close-by.

A Berkeley County grand jury indicted the Defendant on two counts of attempted murder, three counts of malicious assault, five counts of wanton endangerment, and one count of fleeing from a law enforcement officer by means other than use of a vehicle. An additional count alleged that he carried a firearm while he was a felon prohibited from possessing a firearm.

The circuit court severed the "felon illegally in possession of a firearm" count from the other counts. The Defendant was first tried on the "felon illegally in possession of a firearm" count on May 28, 2013. Before trial, the Defendant moved to bifurcate the question of whether he had a prior felony conviction from the question of whether he possessed a firearm. The circuit court denied his motion, and he was found guilty by the jury on that count.

The Defendant was then tried on the remaining counts on September 3, 2013. At trial, the Defendant alleged he acted in self-defense. However, eight witnesses

2

testified to seeing him shoot while chasing McGuire. The jury found the Defendant guilty of two counts of attempted murder of the first degree, three counts of malicious assault, two counts of wanton endangerment involving a firearm, and one count of fleeing from a law enforcement officer by means other than use of a vehicle. Following the jury's verdict, the Defendant filed a motion for a new trial, which the circuit court denied.

## II.
## STANDARD OF REVIEW

The standard of review of a decision by a circuit court denying a new trial is as follows:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

## III.
## ANALYSIS

The Defendant alleges the circuit court committed reversible error by: (1) failing to make a witness invoke his constitutional privilege against self-incrimination in front of the jury, thereby ostensibly violating the Defendant's constitutional right to compulsory process for obtaining witnesses in his favor; (2) failing to instruct the jury it could make a negative inference from the witness's refusal to testify; (3) failing to

3

exclude an officer's comment that the Defendant refused to consent to a gunshot residue test; (4) improperly instructing the jury on the transferred intent doctrine; and (5) declining to bifurcate the question of whether the Defendant was previously convicted of a felony crime from the issue of whether he possessed a firearm.

We find no reversible error as to any of the assignments of error the Defendant raises. As set forth below, we affirm the Defendant's convictions.

### A. *The handling of McGuire as a potential witness*

The Defendant alleged at trial that he acted in self-defense when he shot McGuire. McGuire survived the shooting, but he indicated before the trial that he would refuse to testify. McGuire was brought from an out-of-state federal penitentiary to the Defendant's trial. After arriving in West Virginia, when asked by a detective whether he was willing to testify, McGuire said that the prosecutors in the Defendant's case could "s--t in one hand and wish in the other and see which one fills first."

The prosecutor informed the court at the end of the first day of the Defendant's trial that he would call McGuire as a witness the next day, but he warned the court that McGuire might physically resist being placed on the stand and refuse to testify. Likewise, defense counsel stated that extra bailiffs may be necessary when McGuire is brought into the courtroom. The circuit court added two bailiffs to handle McGuire in the courtroom.

The State called McGuire to testify the next day. Over the Defendant's protests, the court sent the jury into the jury room before having McGuire brought into

4

the courtroom. The circuit court explained to the parties, outside the presence of the jury, that it had been informed that McGuire's presence would constitute a security issue.

Although McGuire was in shackles and handcuffs, he was very combative and was cursing when he was brought into the courtroom. At one point, he was beating his head against the wall. When the bailiffs were bringing him into the courtroom, he exclaimed: "Get off me, man. How can you (inaudible) in the f--king courtroom, man? I don't care. I'm not coming in here, man."

Once McGuire was brought into the courtroom, the following exchange took place outside the jury's presence:

> COURT REPORTER: Mr. McGuire, is your last name spelled M-C-G-U-I-R-E?
>
> MCGUIRE: (No response.)
>
> . . .
>
> COURT: Sir, are you willing to take the stand?
>
> MCGUIRE: No, I'm not.
>
> COURT: Okay. I'm going to hold you in contempt . . .

The court subsequently had McGuire removed from the courtroom. Upon the jury's return into the courtroom, the court told the jury that McGuire refused to take the oath and testify. The circuit court also told the jurors that it determined that McGuire could not be physically forced to testify.

Near the end of the trial, the Defendant called McGuire as a witness. Again, the circuit court sent the jury to the jury room over the Defendant's objections

before having McGuire brought into the courtroom. McGuire again refused to testify and, on one occasion (outside the jury's presence), he abruptly stated, "I plead the Fifth." The Defendant's lawyer moved that McGuire be granted immunity and the prosecution agreed. Therefore, the circuit court granted McGuire immunity against any charges the State could bring against him arising out of his testimony.[1] After the grant of immunity, the following exchange took place outside the jury's presence:

> MCGUIRE: . . . I have no intentions on testifying. I am not taking the stand and I am not testifying.
>
> COURT: Are you saying that you refuse to take the stand?
>
> MCGUIRE: That's what I'm saying. I refuse to take the stand and I refuse to testify.
>
> COURT: Are you saying-so you are no longer taking the Fifth? You're just saying you refuse-
>
> MCGUIRE: I refuse to talk, period, that's what I'm saying. I refuse to talk. I refuse to take the stand and I refuse to testify.
>
> COURT: Would you raise your right hand and be sworn in?
>
> MCGUIRE: No, I am not.
>
> COURT: Okay. I'm not going to make any further inquiry. You may take him back. . . .

---

[1] There are two types of immunity from prosecution a defendant can be offered in exchange for his/her testimony: use or transactional. The appendix-record does not specify which type of immunity McGuire was granted. For a discussion on the distinction between use and transactional immunity, *See* N. Hollander, *Standard of Potential Incrimination – Immunity*, Wharton's Criminal Procedure § 20:8 (14th ed. 2010). *See also State ex. rel. Brown v. MacQueen*, 169 W.Va. 56, 285 S.E.2d 486 (1981).

After dismissing McGuire from the courtroom, the circuit court brought the jury back into the courtroom. The court informed the jury that, like the day before, McGuire refused to testify. This time, however, the court added that McGuire had to be physically restrained while in the courtroom and that bringing him into the jury's presence would be a safety issue for the jury. The jury never saw McGuire.[2]

After the trial, the court entered a contempt order against McGuire. The order stated that McGuire was in custody and that the State secured his appearance for the Defendant's trial pursuant to a writ of habeas corpus *ad testificandum*. Importantly, the trial court found:

> The Court was advised by court security, out of the presence of the jury, that witness McGuire would not physically take the stand and expressed his intention to physically resist taking the stand. Out of the presence of the jury, witness McGuire was brought into the courtroom. He physically resisted the officers upon being brought into the courtroom and then banged his head against a wall. The Court inquired of the witness would he take the stand. Witness McGuire refused. He further refused to take the oath. Although the witness was no longer actively physically resisting, he had to be held by two security officers during this inquiry. Whereupon, the Court advised witness McGuire that he would be held in contempt. The witness still refused to comply with the Court's orders to take the stand and take the oath.

McGuire was found in contempt for (1) misbehavior in the presence of the court and (2) disobedience to a lawful order of the Court.

---

[2] The Defendant raises no issue in this appeal concerning the circuit court's statements to the jury about McGuire's refusal to testify.

7

In short, McGuire not only refused to testify at the Defendant's trial, but he also stated, "I plead the Fifth." The circuit court interpreted McGuire's actions as an invocation of the right against self-incrimination, and therefore granted McGuire immunity from prosecution.[3]

The Defendant argues that the circuit court erred when it failed to force McGuire to invoke his Fifth Amendment privilege against self-incrimination in front of the jury.[4] The Defendant further argues that when he called McGuire to testify, the circuit court's failure to put McGuire in front of the jury violated the Defendant's Sixth Amendment right to compulsory process for obtaining witnesses in his favor.[5] The State

---

[3] One could contend, from merely reading the record, that abruptly stating "I plead the Fifth" was not really a clear invocation of the privilege by McGuire. This, however, would read McGuire's comment out of its context. Regardless of what this Court may think, the circuit court, at the time, in the courtroom, believed that McGuire invoked the privilege, and thereafter offered him immunity from prosecution.

[4] The Fifth Amendment states: "No person shall be held to . . . be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend V. Likewise, West Virginia's State Constitution provides: "[N]or shall any person, in any criminal case, be compelled to be a witness against himself[.]" W.VA. CONST. art. III, § 5.

[5] The Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right to . . . have compulsory process for obtaining witnesses in his favor[.]" U.S. CONST. amend. VI. Likewise, our State Constitution provides: "In all such trials . . . there shall be awarded to [a defendant] compulsory process for obtaining witnesses in his favor." W.VA. CONST. art III, § 14.

The Defendant also argues that when the circuit court declined to put McGuire in front of the jury when the State called him, it violated the Defendant's constitutional right to confront the witnesses against him. This argument has no merit because the State did not use McGuire as a witness against the Defendant. Hence, there was nothing for the Defendant to confront. See U.S. v. Soriano-Jarquin, 492 F.3d 495, 504 (4th Cir. 2007).

8

counters that the circuit court's decision not to put McGuire in front of the jury was not error because McGuire could not have been forced to testify.

"The constitutional right against self-incrimination does not extend to prevent the physical appearance of a person at trial." Syl. Pt. 2, *State v. Harman*, 165 W.Va. 494, 270 S.E.2d 146 (1980). Ordinarily, a non-party witness may not refuse to take the stand in a criminal trial by simply asserting the constitutional right against self-incrimination. "'(B)y universal holding, one not an accused must submit to inquiry (including being sworn, if the inquiry is one conducted under oath)[.]'" *Id.*, 165 W.Va. at 504, 270 S.E.2d at 153 (quoting McCormick on Evidence § 136 (2d ed. 1972)).

Furthermore, we have held that a witness asserting the privilege against self-incrimination must "take the stand, be sworn to testify, and assert the privilege in response to each allegedly incriminating question as it is asked." *In re Anthony Ray Mc.*, 200 W.Va. 312, 323, 489 S.E.2d 289, 300 (1997) (quoting *Roach v. Nat'l Transp. Safety Bd.*, 804 F.2d 1147, 1151 (10th Cir. 1986)). As we said in *Harman*, one who is not an accused must take the stand and "may invoke the privilege only after the potentially incriminating question has been put. Moreover, invoking the privilege does not end the inquiry and the subject may be required to invoke it as to any or all of an extended line of questions." *Harman*, 165 W.Va. at 504, 270 S.E.2d at 153 (quoting McCormick on Evidence § 136 (2d ed. 1972)). Accordingly, the ordinary rule is that a non-party witness

9

must assert his/her Fifth Amendment privilege against self-incrimination in front of the jury.[6]

Nevertheless, in *State v. Whitt*, 220 W.Va. 685, 649 S.E.2d 258 (2007), a case in which a co-accused of the defendant refused take the stand in the jury's presence, this Court held that a trial court has discretion to exclude a witness from the jury's presence when the witness intends to invoke the constitutional privilege against self-incrimination. *Whitt* states:

> Where a defendant in a criminal case seeks to call a witness to the stand who intends to invoke his or her Fifth Amendment privilege against self-incrimination and the defendant has presented sufficient evidence to demonstrate the possible guilt of the witness for the crime the defendant is charged with committing, the trial court has the discretion to compel such witness to invoke his or her Fifth Amendment privilege in the presence of the jury.

Syl. Pt. 6, *Whitt*, 220 W.Va. 685, 649 S.E.2d 258.  In *Whitt*, we further held that a court's discretion on this issue should be guided by whether the defendant would be unfairly prejudiced if the witness did not take the stand to invoke the privilege in the jury's presence.  Syl. Pt. 7, *Whitt*, 220 W.Va. 685, 649 S.E.2d 258.

*Whitt* is factually distinguishable from this case because McGuire is the victim, not the co-accused for the crime the Defendant is charged with; no one is alleging

---

[6] We note that the circuit court was initially of the opinion that McGuire should take the stand and invoke his constitutional privilege against self-incrimination in front of the jury.  The circuit court changed its mind, however, upon determining that McGuire could not physically be forced to take the stand and testify and that he was a security risk and a potential threat to the safety of the jury.

10

McGuire shot himself in the back. Nevertheless, we find this holding in *Whitt* problematic because it suggests that when a witness blithely asserts a blanket privilege against self-incrimination, the trial court has the discretion to keep the witness off of the stand for any and all questions. Allowing a non-party witness to unilaterally keep him/herself off the witness stand by merely offering a blanket invocation of the privilege against self-incrimination is inconsistent with our procedure for a witness to invoke this constitutional privilege. *See Anthony Ray Mc.*, 200 W.Va. at 323, 489 S.E.2d at 300 (holding that non-party witnesses must "take the stand, be sworn to testify, and assert the privilege in response to each allegedly incriminating question as it is asked").

We therefore hold that, in a criminal trial, when a non-party witness intends to invoke the constitutional privilege against self-incrimination, the trial court shall require the witness to invoke the privilege in the presence of the jury. The constitutional privilege against self-incrimination may only be invoked when a witness is asked a potentially incriminating question. To the extent *State v. Whitt*, 220 W.Va. 685, 649 S.E.2d 258 (2007), is inconsistent with this holding, it is hereby modified.

We are mindful that our holding does not mirror the shortcut majority approach of some federal courts in regards to when a non-party witness intends to refuse to testify. *See, e.g., Bowles v. U.S.*, 439 F.2d 536, 541-42 (D.C. Cir. 1970) (holding that a witness should not be put on the stand for the purpose of having him exercise his privilege before the jury, partly on the ground that the "jury may think it high courtroom drama[.]"); *See also, U.S. v. Johnson*, 488 F.2d 1206, 1211 (1st. Cir. 1973) ("If it appears that a witness intends to claim the privilege as to essentially all questions, the court may,

11

in its discretion, refuse to allow him to take the stand").[7]  We also note that the United States Supreme Court has not ruled on this issue, meaning that the states have discretion on how to approach this issue under the federal Fifth Amendment and respective state constitutions.

The majority approach is largely comprised of cases from the federal courts, and many of the state court decisions following the federal courts do so with very little analysis.  This Court has often noted that federal case law "may be persuasive, but it is not binding or controlling" on this Court.  *Brooks v. Isinghood*, 213 W.Va. 675, 682, 584 S.E.2d 531, 538 (2003).  While we certainly give deference to federal court interpretations of the federal Constitution, this does not mean that our interpretation of rights under our state Constitution "should amount to nothing more than Pavlovian responses to federal decisional law."  *Stone v. St. Joseph's Hosp. of Parkersburg*, 208 W.Va. 91, 112, 538 S.E.2d 389, 410 (2000) (McGraw, J., concurring, in part, and dissenting, in part).

Our reading of the majority approach is that it impedes a defendant's fundamental right to present a complete and strong defense, a principle which is embodied in the Compulsory Process Clause of both the Sixth Amendment of the U.S. Constitution and Article III, Section 14 of the *West Virginia Constitution*.  When the right to compulsory process is curtailed, a defendant's ability to counter the prosecution's case

---

[7] For a discussion on how various jurisdictions rule as to whether a non-party witness should be required to appear in front of the jury when he/she intends to refuse to testify, *See Gray v. State*, 368 Md. 529, 562-63, 796 A.2d 697, 716-17 (2002).

12

is diminished. Even though juries are instructed to presume a defendant's innocence, they may still improperly infer a defendant's guilt when an important witness fails to testify – particularly if defense counsel, in opening statement, refers to this person as a witness to the events that occurred.

We therefore feel that our deviation from the majority approach is necessary. This Court has a firmly established procedure for a non-party witness to invoke the privilege against self-incrimination, and this procedure has been extended to Article III, Section 5 of our state Constitution. *Harman*, 165 W.Va. at 504, 270 S.E.2d at 153 (quoting McCormick on Evidence § 136 (2d ed. 1972)) (a non-party witness "may invoke the privilege only after the potentially incriminating question has been put."). Allowing a witness to avoid taking the stand because he/she intends to refuse to testify directly contradicts this procedure. It allows the witness to unilaterally avoid answering relevant, non-incriminating questions.

Even worse, the approach makes it possible for an uncooperative witness to defy a trial court's authority. *See Anthony Ray Mc.*, 200 W.Va. at 323, 489 S.E.2d at 300 ("'The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified[.]'") (quoting *Hoffman v. U.S.*, 341 U.S. 479, 486 (1951)). Under the approach used by some federal courts, the witness can unilaterally invoke blanket immunity even though some questions may be non-incriminating. We have also noted that a witness who intends to invoke the privilege against self-incrimination may change his/her mind and testify once being

13

placed on the stand. *See Whitt*, 220 W.Va. at 695, 649 S.E.2d at 268. However, this change of heart cannot occur if the witness is not first put on the stand and required to answer non-incriminating questions.

More importantly, however, the Sixth Amendment right to compulsory process for obtaining witnesses in his/her favor is a fundamental right, and excluding a defense witness from the jury's presence would impinge on this fundamental right for reasons outside the defendant's control. *See Washington v. Texas*, 388 U.S. 14, 19 (1967) (holding the right to compulsory process is a fundamental right). Furthermore, when a witness is especially important to the defense (*e.g.*, when the witness is a co-accused), excluding the witness from the jury's presence may cause jurors to unfairly assume that the defense was frivolous or insincere because they did not see the witness be questioned. *See Gray v. State*, 368 Md. 529, 558, 796 A.2d 697, 714 (2002).

We also find that the rationale of the majority approach is arbitrary insofar as it claims that it is "high courtroom drama" to require a non-party witness to appear in front of the jury even though he/she intends to refuse to testify. We have said that the State has "a right to emphasize the fact of the crime to the jury in as graphic a manner as possible," *State v. Sette*, 161 W.Va. 384, 396, 242 S.E.2d 464, 472 (1978); why then should a defendant be denied the right to present his or her case just as dramatically?[8]

---

[8] *See, e.g.*, *State v. Mayle*, 178 W.Va. 26, 30, 357 S.E.2d 219, 223 (1987) ("Murder trials are often exciting for the jury. This one had more than the usual share of thrills. While the jury was visiting the scene of the murder, a van jumped the curb and apparently deliberately tried to run down several members of the jury. The van did not hit any jurors, but narrowly missed some.").

There are many forms of evidence that we have held admissible and which invoke a far more dramatic effect than a witness who insists on keeping silent in front of the jury. Some examples of highly dramatic evidence that we have allowed to be introduced before juries include gruesome autopsy photographs;[9] photos of a murder victim at the crime scene,[10] even photos depicting gunshot wounds through the head;[11] testimony by a murder victim's spouse and children;[12] suicide notes;[13] and testimony by a

---

[9] *State v. Mongold*, 220 W.Va. 259, 263, 647 S.E.2d 539, 543 (2007) (autopsy photos showing "four blunt impacts" to child victim's head admissible); *State v. Copen*, 211 W.Va. 501, 505, 566 S.E.2d 638, 642 (2002) (close-up photo of the disfigured face of the victim showing, "in somewhat high resolution, a gap in the victim's head where a bullet entered the victim's eye and exited through the victim's temple," and autopsy photos of her nude body on a morgue slab, front and back, were admissible).

[10] *State v. Sette*, 161 W.Va. 384, 397, 242 S.E.2d 464, 472 (1978) (introduction into evidence of pictures of the dead victim and the area surrounding the room where she was murdered was not an abuse of discretion); *State v. Haddox*, 166 W.Va. 630, 635, 276 S.E.2d 788, 791 (1981) (three color photographs of victim's stab wounds admissible); *State v. Wheeler*, 187 W.Va. 379, 419 S.E.2d 447 (1992) (finding no reversible error in admission of twelve "gruesome" photographs of blood trails of the victim, and two "blood-stiffened garments" into evidence).

[11] *State v. Carey*, 210 W.Va. 651, 655, 558 S.E.2d 650, 654 (2001) (photograph of partially-dressed victim shot in head and stabbed admissible to show "the expanse of the room," and because it did not clearly "show the top of the victim's head blown away").

[12] *State v. Wheeler*, 187 W.Va. 379, 388, 419 S.E.2d 447, 456 (1992) (finding no reversible error in trial court allowing murder victim's wife to testify for purpose of identifying the deceased and establishing his date of death, stating that "[C]ourts tend to look upon testimony by a surviving spouse with disfavor. However, the admission of such evidence does not necessarily constitute reversible error.").

[13] *State v. Satterfield*, 193 W.Va. 503, 513, 457 S.E.2d 440, 450 (1995) (finding the probative value of a suicide note was not substantially outweighed by any unfair prejudice).

15

defendant's parents begging the jury to be merciful.[14]  Certainly then, the possibility of "high courtroom drama" is not a sufficient reason to impinge on the defendant's right to compulsory process.  The Constitution is not trumped by a little drama in the courtroom.

By contrast, our rule is consistent with the well-established mantra that "[a] witness may not invoke the right against self-incrimination by a 'blanket' refusal to testify but instead must take the stand, be sworn in, and assert the right in response to each allegedly incriminating question."  *Fifth Amendment at Trial*, 41 Geo. L.J. Ann. Rev. Crim. Proc. 661, 670 (2013).  *See also N. River Ins. Co. v. Stefanou*, 831 F.2d 484, 486-87 (4th Cir. 1987) (witness cannot make blanket assertion of Fifth Amendment right because it is insufficient to allow court to make reasonable assessment of risk of incrimination).

In this case, we find that the circuit court erred in allowing McGuire to make a blanket assertion of the Fifth Amendment because he had no right to do so.  In dealing with McGuire, the trial court should have considered the alternatives available (which are discussed below) when a witness refuses to testify because of his/her invocation of the constitutional privilege against self-incrimination.

We turn now to whether the circuit court's failure to make McGuire appear in front of the jury violated the Defendant's constitutional right to compulsory process for obtaining witnesses in his favor.  The State urges us to adopt the rule that "[o]nce a

---

[14]  *State ex rel. Kitchen v. Painter*, 226 W.Va. 278, 289, 700 S.E.2d 489, 500 (2010) (defendant's mother testified and asked jury for mercy, after defendant was convicted of beating victim to death with a baseball bat).

16

witness appears in court and refuses to testify, a defendant's compulsory process rights are exhausted." *See U.S. v. Griffin*, 66 F.3d 68, 70 (5th Cir. 1995). This rule, however, lacks support from this Court's case law.

We are cognizant that: "[t]o safeguard the integrity of its proceedings and to insure the proper administration of justice, a circuit court has inherent authority to conduct and control matters before it in a fair and orderly fashion." Syl. Pt. 2, *State v. Fields*, 225 W.Va. 753, 696 S.E.2d 269 (2010). Furthermore, we realize that the circuit court made some effort to balance the Defendant's right to compulsory process with its concern for courtroom security by having McGuire shackled and handcuffed while he was in the courtroom, holding him in contempt for his refusal to testify, and adding two extra bailiffs to help handle McGuire in the courtroom.

However, instead of summarily declining to make a non-party witness appear in front of the jury on the ground that he/she is a courtroom security issue, trial courts should consider all of the available alternatives to control recalcitrant witnesses. For example, a trial court may, as the circuit court did in this case, hold a witness in contempt for refusing to testify, add extra bailiffs to handle the witness, have the witness in shackles and handcuffs while in the courtroom, *etc*. *See State v. Kuchera*, 469 A.2d 1052, 1065 (N.J. 2009) (finding trial court acted within its discretion to allow witness, who was a state prisoner, to testify in leg shackles when witness was placed in jury box

before jury entered courtroom). In addition, trial courts facing a recalcitrant witness should consider securing the witness's appearance via two-way-live video.[15]

The circuit court failed to consider having McGuire appear in front of the jury via two-way-live video even though doing so would have enhanced security in the courtroom while simultaneously protecting the Defendant's Sixth Amendment right to compulsory process for obtaining witnesses in his/her favor. If the circuit court would have considered all of its options for handling McGuire as a witness, the Defendant would have had the benefit of the jury seeing the man who allegedly provoked him to act in self-defense. At the same time, however, the jurors would have been protected from any danger McGuire could have posed to them.

Therefore, we find the circuit court's decision not to make McGuire appear in front of the jury was error and violated the Defendant's constitutional right to compulsory process. In self-defense cases, the physical stature and demeanor of a

---

[15] This Court has recently upheld a trial court's use of two-way-live video in handling potentially violent witnesses. *See State v. Cox*, No. 13-0778, 2014 WL 4930264 (W.Va. Oct. 2, 2014) (memorandum decision) (finding trial court did not abuse its discretion when it allowed six incarcerated witnesses to testify through videoconference on the ground that they were a potential security threat).

A defendant's Sixth Amendment right to confront the witnesses against him/her may be satisfied absent a physical face-to-face confrontation at trial where: (1) "denial of such confrontation is necessary to further an important public policy," and (2) "the reliability of the testimony is otherwise assured." *Maryland v. Craig*, 497 U.S. 836, 850 (1990). In a similar situation, it has been held that allowing testimony via video conference of a witness who had been committed to a mental institution and was so unstable that "he posed a substantial risk to himself and others," did not violate the defendant's right to confront the witnesses against him. *Kramer v. State*, 277 P.3d 88, 94 (Wyo. 2012).

18

victim-witness is important evidence. However, after careful review of the appendix-record in this case, we find this was harmless error. *See Sixth Amendment at Trial*, 40 Geo. L.J. Ann. Rev. Crim. Proc. 663, 691 (2011) ("A violation of the Compulsory Process Clause is . . . subject to harmless error analysis and will constitute harmless error if it is established beyond a reasonable doubt that the violation did not contribute to the verdict.").

In this case, eight witnesses testified to seeing the Defendant chase McGuire through a crowded park while shooting at his back multiple times. At the close of the trial, the circuit court gave the jury a self-defense instruction, and defense counsel was permitted to argue self-defense to the jury. Put simply, the question of self-defense was placed before the jury but was fully rejected. Consequently, even if the Defendant had the benefit of McGuire appearing in front of the jury, no reasonable jury would have found that the Defendant acted in self-defense. *See State v. Harden*, 233 W.Va. 796, 801, 679 S.E.2d 628, 633 (2009) ("A long-standing tenet of our self-defense doctrine is that a defendant's use of deadly force must be based upon a reasonable apprehension by the defendant that he or she was at imminent peril of death or serious bodily injury."). Accordingly, the Defendant is not entitled to a new trial on the issue of the circuit court's exclusion of McGuire from the jury's presence. Because of the overwhelming amount of the State's evidence, McGuire's appearance in front of the jury would not have changed the jury's verdict. Syl. Pt. 2, *State v. Frazier*, 229 W.Va. 724, 753 S.E.2d 727 (2012). *See also U.S. v. Valenzuela-Bernal*, 458 U.S. 858, 868 (1982) ("If there is no reasonable

doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.").

**B.** *The Defendant's proposed negative inference jury instruction*

The Defendant submitted a proposed jury instruction that would have allowed the jury to draw a negative inference from McGuire's failure to testify. Even though the Defendant concedes that we have no case law *specifically* supporting negative inference jury instructions in criminal trials, he argues that *Whitt* entitles him to the benefit of a negative inference from a witness's failure to testify. *See Whitt*, 220 W.Va. at 698, 649 S.E.2d at 270 (2007).

This Court disagrees with the Defendant's argument under *Whitt* that the circuit court should instruct the jury to draw an inference favorable to the defendant from a witness's failure to testify. In fact, we note that courts across this country have expressed grave concern about such inferences.[16] Some of our concerns are encapsulated in the following language from the Connecticut Supreme Court:

> Reason and human experience indicate that inferences [from a non-party witness's refusal to testify in a criminal proceeding] are certainly suggested by such a tactic; the danger inherent in this circumstance is that the inference or inferences drawn may have little, if any, juristic relation to

---

[16] *See Devia v. State*, 718 S.W.2d 72, 74 (Tex. App. 1986) ("The refusal of such witness to testify on the grounds of self-incrimination cannot be made the basis of any reasonable inference by the jury, either favorable to the prosecution or favorable to the defense."). *Accord State v. Henry*, 176 Ariz. 569, 863 P.2d 861 (1993); *State v. Bryant*, 202 Conn. 676, 523 A.2d 451 (1987); *Hutson v. State*, 747 S.W.2d 770 (Mo. Ct. App. 1988); *People v. Rivera*, 205 A.D.2d 563, 613 N.Y.S.2d 210 (N.Y. App. Div. 1994).

20

the issues before the jury. More important, however, is the fact that the inference, whatever it may be, cannot be attacked effectively by cross-examination.

*State v. Bryant*, 202 Conn. 676, 684, 523 A.2d 451, 456 (1987).

Furthermore, an instruction allowing the jury to draw an inference from a non-party witness's failure to testify could be confusing to the jury because the witness's failure to testify could be favorable or adverse to either or both parties. This problem is especially apparent where, as here, the witness was called by both the defense and the prosecution but failed to testify for either side.[17]

Therefore, in a criminal trial, where a non-party witness invokes the constitutional privilege against self-incrimination or otherwise fails to testify, a party is not entitled to an instruction allowing the jury to infer that the witness's testimony would be favorable or unfavorable to either the defendant or the prosecution. To the extent *State v. Whitt*, 220 W.Va. 685, 649 S.E.2d 258 (2007), is inconsistent with this holding, it is hereby modified. Accordingly, the trial court was correct to reject the Defendant's proposed jury instruction allowing the jurors to make an inference favorable to the Defendant from McGuire's refusal to testify.

---

[17] We note that this case is unique in that McGuire refused to testify for both the prosecution and the defense. Therefore, a negative inference instruction based on McGuire's refusal to testify would be confusing to the jurors because they would not know which party to draw the inference against. In fact, because McGuire refused to testify for both sides, it is likely that any inferences drawn against the prosecution and against the Defendant would cancel each other out. For a discussion on negative inferences in criminal cases, *see* Wayne LaFave, *et. al.*, *Forcing a Claim of Privilege By a Witness*, West's Criminal Practice Series § 24.4(c) (3d ed. 2014).

## C. *Comment by officer regarding the Defendant's non-cooperation*

The Defendant did not consent to gunshot residue testing at the time of his arrest, and he forced the officers to obtain a search warrant. Consequently, the officers were not able to get a gunshot residue sample from the Defendant until three to four hours after he had shot McGuire. The test results from the sample showed no trace of gunshot residue.[18]

When the State attempted to explain why no gunshot residue ("GSR") was found on the Defendant by questioning an investigating officer, the following exchange took place:

> Prosecutor: Okay. Do you have any information as to what time the GSR was taken from [the Defendant]?
>
> Doyle: There was some time in the past several hours following. I believe if they do it like three or four hours afterwards that we took the GSR from [the Defendant]. Maybe less.
>
> . . . .
>
> Prosecutor: Is that ideal?
>
> Doyle: Ultimately you would like to take them as quick as possible. *[The Defendant] was not cooperating with us at the time*.

(Emphasis added.)

---

[18] One of the State's witnesses testified extensively regarding the fleeting nature of gunshot residue and compared it to chalk-dust, stating that "[t]he more time that passes, due to more activity [*sic*] the more particles could be removed."

The Defendant moved to strike the officer's comment about him not being cooperative on the ground that it improperly referenced the Defendant's exercise of his constitutional right to not allow a search of his person without a warrant as well as his right to not give a statement. The circuit court overruled the Defendant's motion and later called the officer's comment "harmless at this point in time." The Defendant alleges that the circuit court erred by deciding not to strike the officer's comment.

As reflected by the trial transcript, the officer's comment about the Defendant's lack of cooperation was unresponsive to the prosecutor's question, and it was never mentioned again during the trial, nor was it dwelled upon by the prosecutor. We have held that a brief, unresponsive answer not dwelled upon by the prosecution is not prejudicial error. *See, e.g., State v. Hillberry*, 233 W.Va. 27, 34, 754 S.E.2d 603, 610 (2014) (an "unresponsive brief reference by a witness about a defendant's pretrial silence is not prejudicial error when the silence was not made an issue or dwelled upon by the prosecution"); *State v. Marple*, 197 W.Va. 47, 54, 475 S.E.2d 47, 54 (1996) (Even if the brief reference to a defendant's pretrial silence was plain error, it was not necessarily reversible error.). We do not find that the police officer's brief, unresponsive reference to the Defendant's failure to cooperate at the time of arrest affected the fairness of his trial. The prosecutor did not make it an issue or bring up the subject again. The court's decision not to strike the officer's comment does not amount to reversible error.

The Defendant argues, in the alternative, that the circuit court should have issued a cautionary instruction telling the jurors that they could not hold the Defendant's exercise of his constitutional rights against him. At trial, the circuit court judge stated to

23

the Defendant: "I think I'll give a cautionary instruction in the jury instructions *if that's requested*. My question about something like that is whether it emphasizes it more than . . . emphasizes it more to bring it up." (Emphasis added). It appears from the appendix-record that this was a satisfactory answer as far as the Defendant was concerned.

The Defendant did not submit a proposed cautionary instruction during the charge conference, and he did not object to the jury instructions during the course of finalizing the instructions. Therefore, the circuit court's failure to include a cautionary instruction is reviewed as "plain error." *W.Va. R. Crim. P.* 30 [1995].

We have held: "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). In *Miller*, we stated that plain error is error that is clear or obvious. Syl. Pt. 8, *id*. We also stated that an error affected a defendant's substantial rights when it was prejudicial or affected the outcome of the case. Syl. Pt. 9, *id*. The Defendant, not the State, bears the burden of persuading the Court on this issue. Syl. Pt. 9, *id*.

We find no error in the circuit court's not giving a cautionary instruction as to the officer's comment. However, even if it was error, it was certainly not plain error. The circuit court noted that a cautionary instruction on the officer's comment may overemphasize the Defendant's lack of cooperation as to gunshot residue testing. The Defendant may have strategically decided not to submit a cautionary instruction on this matter because he agreed with the circuit court's comment.

24

Further, the circuit court's decision not to issue a cautionary instruction did not affect the Defendant's right to a fair trial. Given the amount of evidence against him (eight people testified that they saw him chase McGuire while shooting a gun), we are not convinced that it affected the trial's outcome. Therefore, the Defendant's assignment of error as to this issue is without merit.

### D. *Transferred intent jury instruction*

In instructing the jury on the count of attempted murder of the eight-year-old girl, the circuit court provided the elements of attempted murder of the first degree as being: "the willful, deliberate, premeditated, and malicious attempted killing of another person." The court's instructions also provided that before the jury may find the Defendant guilty of attempted murder of the first degree, the State must prove the following beyond a reasonable doubt:

> 1. The Defendant . . .
> 2. In Berkeley County, West Virginia,
> 3. On or about July 4, 2012,
> 4. Did unlawfully, intentionally, maliciously, willfully, deliberately and premeditatedly,
> 5. Attempt to kill [the eight-year-old girl].

The circuit court continued (with emphasis added):

> If after impartially considering, weighing and comparing all the evidence, the jury and each member of the jury is convinced beyond a reasonable doubt of the truth of the charge as to each of these elements of Attempted Murder of the First Degree, you may find the Defendant guilty of Attempted Murder of the First Degree as charged in Count Four. *If the jury and each member of the jury has a reasonable doubt of the truth of the charge as to any one or*

25

*more of these elements of Attempted Murder of the First Degree,* you shall find the Defendant not guilty of Attempted Murder in the First Degree as to this count and deliberate upon the lesser included offense of Attempted Murder of the Second Degree.

Finally, the circuit court gave a transferred intent instruction based on Syllabus Point 6 of *State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991) ("The doctrine of transferred intent provides that where a person intends to kill or injure someone, but in the course of attempting to commit the crime accidentally injures or kills a third party, the defendant's criminal intent will be transferred to the third party.").

The Defendant did not object to the circuit court's transferred intent jury instruction. However, he now argues that, because the circuit court told the jurors they could transfer the Defendant's intent to murder McGuire to the shooting of the eight-year-old girl, the circuit court was obligated to specify that intent was the only element that may be transferred as between those two counts.

Due to the Defendant's failure to contemporaneously object, the instructions are reviewed for plain error under *West Virginia Rule of Criminal Procedure* 30 [1995]. A trial court's decision will not be disturbed unless there was: "(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *Miller*, 194 W.Va. 3, 459 S.E.2d 114. An error does not affect substantial rights unless it was prejudicial, meaning it affected the trial's outcome. Syl. Pt. 9, *id*.

First, we find no error as to the circuit court's transferred intent jury instruction because it was supported by our law in *Julius*. *See* Syl. Pt. 4, in part, *State v.*

26

*Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995) ("Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion."). Furthermore, the circuit court made clear that the jury had to find all the elements of attempted murder in order to convict the Defendant on the count as to the eight-year-old girl. The instructions provided that the jury could not return a guilty verdict on the attempted murder count as to the eight-year-old girl if the jury had "a reasonable doubt of the truth of the charge as to *any one or more of these elements* of attempted murder in the first degree[.]" (Emphasis added).

However, even if there was error in the trial court's transferred intent instruction, it did not affect the trial's outcome, and therefore, it did not affect the Defendant's substantial rights. Syl. Pt. 9, *Miller*, 194 W.Va. 3, 459 S.E.2d 114. As stated multiple times in this opinion, eight witnesses testified to seeing him chase McGuire with the revolver. It is undisputed that in the process of chasing McGuire and firing this gun, he shot an eight-year-old girl. Therefore, we cannot say that the circuit court's failure to qualify its transferred intent instruction amounted to reversible error under the plain error doctrine.

### E. *Bifurcation of the felon illegally in possession of a firearm count*

The jury also convicted the Defendant of carrying a firearm when he was a felon prohibited from possession of a firearm in violation of *W.VA. CODE* § 61-7-7(b)(1)

[2008].[19] The circuit court denied the Defendant's motion to bifurcate for trial the issue of whether he was a convicted felon from the issue of whether he carried a firearm. The Defendant argues that the circuit court violated our holding in *State v. McCraine*, 214 W.Va. 188, 588 S.E.2d 177 (2003), by denying his motion.[20] The Defendant's argument relies on the following language from *McCraine*:

> A trial court must grant bifurcation in *all* cases tried before a jury in which a criminal defendant seeks to contest the validity of any alleged prior conviction *as a status element* and timely requests that the jury consider the issue of prior conviction *separately from the issue of the underlying charge*.

Syl. Pt. 11, in part, *McCraine*, 214 W.Va. 188, 588 S.E.2d 177 (emphasis added).

The fact that a defendant has been previously convicted of a crime is a status element when: (1) his/her prior conviction makes otherwise legal conduct illegal, meaning that the prior conviction is an essential element of the current crime charged (*e.g.*, a felon possessing a firearm); or (2) the prior conviction is merely a penalty enhancer, meaning that it enhances the penalty for conduct that is itself illegal even without the defendant's prior convictions (*e.g.*, third-offense driving under the influence).

Our prior cases that discuss status elements have only involved the second type – penalty enhancers. Consequently, our case law has not distinguished between

---

[19] *W.VA. CODE* § 61-7-7(b)(1) [2008], provides, in part: "[N]o person shall possess a firearm . . . who: has been convicted . . . of a felony crime of violence against another person[.]" Effective July 16, 2013, the Legislature modified the 2008 version of *W.VA. CODE* § 61-7-7 that was in effect during the July 2012 events underlying the Defendant's conviction. The modification has no effect on our decision.

[20] The Defendant's prior felony conviction was for Aggravated Robbery.

28

these two types of status elements (penalty enhancers versus essential elements of the current crime charged). Instead, our prior cases have treated all status elements the same regardless of whether they serve as an essential element of the current crime charged or as a penalty enhancer for conduct that is itself illegal.

Initially, our cases gave trial courts discretion to allow a prosecutor in a criminal case involving a status element to inform the jury of the name and nature of the defendant's prior convictions, even when the defendant stipulated to his/her status as a convicted felon. For example, in *State v. Hopkins*, 192 W.Va. 483, 453 S.E.2d 317 (1994), in which the defendant was charged with third-offense shoplifting (meaning the defendant's prior convictions were penalty enhancers), we stated: "[W]here a prior conviction is a necessary element of the current offense charged or is utilized to enhance the penalty after a jury finding that the defendant has committed such prior offense, it is admissible for jury purposes." *Id.*, 192 W.Va. at 489, 453 S.E.2d at 323 (quoting *State v. Cozart*, 177 W.Va. 400, 402, n.1, 352 S.E.2d 152, 153, n.1 (1986)).

However, even at that time, Justice Cleckley recognized that courts should treat status elements differently when they serve as an essential element of the current crime charged rather than merely enhancing the penalty for conduct that is itself illegal. In a separate opinion, Justice Cleckley argued that the defendant's trial should have been bifurcated because the defendant's prior convictions were "elements of penalty enhancement," not "elements of the current charge." *Hopkins*, 192 W.Va. at 496, 453 S.E.2d at 330 (Cleckley, J., dissenting). However, all of our subsequent cases that

29

limited a jury's exposure to status elements involved prior convictions that were elements of penalty enhancement.[21]

Five years after *Hopkins*, in a case where the defendant was charged with third-offense DUI (meaning the prior conviction enhanced the penalty for conduct that is itself illegal), we reversed course and established two, distinct rules in regards to when the defendant stipulates to his/her prior conviction and when the defendant challenges the validity of his/her prior conviction as a status element.

In regards to when the defendant *stipulates* to his/her prior conviction, we held that: "If a defendant makes an offer to stipulate to a prior conviction(s) that is a status element of an offense, the trial court must permit such stipulation and preclude the state from presenting any evidence to the jury regarding the stipulated prior conviction(s)." Syl. Pt. 3, in part, *State v. Nichols*, 208 W.Va. 432, 541 S.E.2d 310 (1999).

By contrast, in regards to when the defendant *challenges the validity of the prior convictions* as a status element, we held in Syllabus Point 4 of *Nichols* (with emphasis added) that:

> [The defendant] may request that the trial court bifurcate the issue of the prior conviction from that of the underlying charge and hold separate jury proceedings for both matters.

---

[21] We note that the majority and the dissent in *Hopkins* disagreed on whether, in a third-offense shoplifting charge, prior convictions were penalty enhancers or necessary elements of the current charge. In a third-offense shoplifting charge, a prior conviction is not what makes shoplifting illegal; rather, it merely enhances the penalty for shoplifting. In analogous charges, prior convictions are clearly penalty enhancers, not necessary elements of the current crime charged.

*The decision of whether to bifurcate these issues is within the discretion of the trial court. In exercising this discretion, a trial court should hold a hearing for the purpose of determining whether the defendant has a meritorious claim that challenges the legitimacy of the prior conviction.* If the trial court is satisfied that the defendant's challenge has merit, then a bifurcated proceeding should be permitted. However, should the trial court determine that the defendant's claim lacks any relevant and sufficient evidentiary support, bifurcation should be denied and a unitary trial held.

By giving trial courts discretion on the issue of bifurcating status elements, Justice Davis wisely noted that imposing a *per se* rule would force trial courts to "hold meritless bifurcated trials." *Id.*, 208 W.Va. at 447, 541 S.E.2d at 325.

Nevertheless, two years after *Nichols*, this Court again addressed a penalty-enhancing prior conviction (third-offense DUI) in *State v. Dews*, 209 W.Va. 500, 549 S.E.2d 694 (2001). In *Dews*, this Court eroded the discretion given to trial courts in *Nichols* as to penalty enhancers by prohibiting trial courts from mentioning to the jury a defendant's stipulation to a prior conviction. 209 W.Va. at 503, 549 S.E.2d at 697.

Two years after *Dews*, in *State v. McCraine*, 214 W.Va. 188, 588 S.E.2d 177 (2003), this Court gutted *Nichols* and took away all discretion from trial courts on bifurcating prior convictions – even if they are an essential element of the offense charged rather than a penalty enhancer. In *McCraine*, the defendant's status of having multiple DUI convictions was a penalty enhancer when he was charged with third-offense DUI. Still, we held in Syllabus Point 11 of *McCraine* that, when the defendant challenges the validity of the prior conviction, the prior conviction *must* be bifurcated from the remaining elements of the current charge. Syl. Pt. 11, *State v. McCraine*, 214

31

W.Va. 188, 588 S.E.2d 177 (2003). *McCraine* makes bifurcation mandatory for any prior conviction that is a status element of an offense regardless of whether it is a penalty enhancer or an essential element of the current offense charged.

Justice Davis wrote a scathing dissent in *McCraine* regarding this *per se* rule, noting that it would encourage "a terrible waste of judicial resources." *See McCraine*, 214 W.Va. at 206, 588 S.E.2d at 195 (Davis, J., dissenting). In *State v. Reed*, 218 W.Va. 586, 625 S.E.2d 348 (2005), Justice Davis further argued that the *McCraine* rule requiring bifurcation should be overruled and that *Nichols* should be reinstated. 218 W.Va. at 591, 625 S.E.2d at 353 (Davis, J., concurring).

Upon further reflection, we are persuaded to reject *McCraine's per se* rule that treats prior convictions that are penalty enhancers the same as prior convictions that are necessary elements of the current crime charged. Our law should distinguish between these two types of status elements. As Justice Cleckley suggested in *Hopkins*, 192 W.Va. at 496, 453 S.E.2d at 330, a defendant's prior convictions should be treated differently when they are "elements of penalty enhancement" rather than "elements of the current charge."

Accordingly, we find the *per se*, blanket holdings in *Dews* and *McCraine*, problematic, at least to the extent that they apply to a charge where the prior conviction makes otherwise legal conduct illegal (*e.g.*, a felon in possession of a firearm charge). When a defendant's status of having a prior conviction is an essential element of the current crime charged (because it makes otherwise legal conduct illegal), bifurcating that status element from the remaining elements results in one trial to determine if the

32

defendant is a felon and another trial to determine if the defendant committed acts that were not themselves illegal. For instance, if the defendant's previous criminal conviction is bifurcated from the remaining elements in an illegal possession of a firearm charge, the jury, in a separate trial, must determine if the defendant is guilty of possessing a firearm, which is not illegal. In turn, ordinary jurors would be left to wonder why the defendant should be convicted of possessing a firearm when they themselves may legally possess, carry, and own guns.[22]

When the defendant's status as a convicted criminal is an essential element of the current charge, it is important that the jury receive evidence of the prior conviction. In the case *sub judice*, if the jurors had not received evidence that the defendant was a felon, they would have been required to determine whether the defendant committed the crime of possessing a firearm, which is not illegal.

---

[22] Multiple other jurisdictions share our concern that bifurcating a prior conviction from the remaining elements of the current crime charged may confuse the jurors when the prior conviction is a necessary element of the current crime charged. *See U.S. v. Collamore*, 868 F.2d 24, 28 (1st Cir. 1989), *overruled on other grounds by U.S. v. Tavares*, 21 F.3d 1 (1st Cir. 1994) ("[W]hen a jury is neither read the statute setting forth the crime nor told of all the elements of the crime, it may, justifiably, question whether what the accused did was a crime. . . . Doubt as to the criminality of [the] conduct may influence the jury when it considers the possession element."); *U.S. v. Barker*, 1 F.3d 957, 959 (9th Cir. 1993) ("The bifurcation order [of a felon illegally in possession of a firearm charge] removes an element of the crime from the jury's consideration, prevents the government from having its case decided by the jury, and changes the very nature of the charged crime."). *See also* D. Michael Risinger, *Johnny Lynn Old Chief, and "Legitimate Moral Force," – Keeping the Courtroom Safe for Heartstrings and Gore,* 49 Hastings L.J. 403, 425 (1998) ("[I]f the jury is not informed that something special makes this a crime for this defendant when it would not be a crime for the jurors, it is not unreasonable to fear that the jurors may become confused, or refuse to convict for nullification reasons.").

33

By contrast, where the defendant's prior convictions are mere penalty enhancers, the bifurcation of the status element from the remaining elements of the charge does not create confusion for the jury. For instance, if a prior conviction in a third-offense DUI case is bifurcated, the jurors would not be left to wonder why the defendant's driving under the influence was illegal if they were not informed of the defendant's prior convictions.

Therefore, when a defendant is charged with a crime in which a prior conviction is an *essential element* of the current crime charged (*e.g.* being a felon in possession of a firearm under *W.VA. CODE* § 61-7-7(b)(1) [2008]), and *does not stipulate* to having been previously convicted of a crime, the trial court shall not bifurcate the prior conviction from the remaining elements of the crime charged. To the extent *State v. McCraine*, 214 W.Va. 188, 588 S.E.2d 177 (2003), is inconsistent with this holding, it is hereby overruled.

Furthermore, when a defendant is charged with a crime in which a prior conviction is an *essential element* of the current crime charged (*e.g.* being a felon in possession of a firearm under *W.Va. Code* § 61-7-7(b)(1)), and *stipulates* to having been previously convicted of a crime, the trial court shall inform the jury that the defendant stipulated to the prior conviction. The jury shall be informed that the defendant was convicted of a prior felony or misdemeanor, but shall otherwise not be informed of the name or nature of the defendant's prior convictions. To the extent *State v. Dews*, 209 W.Va. 500, 549 S.E.2d 694 (2001), is inconsistent with this holding, it is hereby modified.

34

In addition, we are persuaded by Justice Davis's separate opinions in *McCraine*, 214 W.Va. 188, 588 S.E.2d 177, and *Reed*, 218 W.Va. 586, 625 S.E.2d 348, that the rule in *McCraine* is wrong. We are aware of the doctrine of *stare decisis*, but are also aware that, "[s]tare decisis is not a rule of law but is a matter of judicial policy. It is policy which promotes certainty, stability and uniformity in the law. It should be deviated from only when urgent reason requires deviation." *Adkins v. St. Francis Hosp.*, 149 W. Va. 705, 718, 143 S.E.2d 154, 162 (1965). We believe that the *per se* rule of *McCraine* should be abandoned and that our procedure should mirror the discretionary analysis posited in Syllabus Point 4 of *State v. Nichols*, 208 W.Va. 432, 541 S.E.2d 310 (1999). Our decision to abandon *McCraine* demonstrates what Justice Brannon once said: "No legal principle is ever settled until it is settled right." *Town of Weston v. Ralston*, 48 W.Va. 170, 180, 36 S.E. 446, 450 (1900).

We therefore hold that when a defendant is charged with a crime in which a prior conviction merely *enhances the penalty* of the offense currently charged and *does not stipulate* to having been previously convicted of a crime, the defendant may request that the trial court bifurcate the issue of the prior conviction from that of the underlying charge and hold separate jury trials for both matters. The decision of whether to bifurcate these issues is within the discretion of the trial court. In exercising this discretion, a trial court should hold a hearing for the purpose of determining whether the defendant has a prima facie challenge to the legitimacy of the prior conviction. At the hearing, the defendant may proffer evidence that the prior conviction does not exist or is otherwise invalid. If the trial court is satisfied that the defendant's challenge has merit, then a

35

bifurcated proceeding should be permitted.  However, should the trial court determine that the defendant's claim lacks any relevant and sufficient evidentiary support, bifurcation should be denied and a unitary trial held.  To the extent *State v. McCraine*, 214 W.Va. 188, 588 S.E.2d 177 (2003), is inconsistent with this holding, it is hereby overruled.

Where the defendant stipulates to a prior conviction that enhances the penalty of the current crime charged, there will necessarily only be one trial.   We are mindful that a jury's knowledge of a defendant's prior crime by mention of his/her "stipulation has the same unfairly prejudicial effect as presenting the jury with other evidence of the offense[.]"   *State v. Dews*, 209 W.Va. at 504, 549 S.E.2d at 698. Furthermore, when the prior conviction is a penalty enhancer, as opposed to a necessary element of the current crime charged, the jurors would not be required to determine whether the defendant committed an act which is not itself illegal if they are not informed of the prior conviction.  Therefore, when a defendant *stipulates* to a prior conviction that merely *enhances the penalty* for the current charge, the jury shall not be informed of the prior conviction.

## IV.
## CONCLUSION

For the reasons set forth herein, we affirm the Defendant's convictions and sentences.

Affirmed.

36