STATE OF WEST VIRGINIA

*v.*

DONALD ASA HARMAN

(No. 14758)

Decided September 16, 1980.

Rehearing Denied November 19, 1980.

*Hugh Rogers* for appellant.

*Chauncey H. Browning*, Attorney General, *Gregory W. Bailey*, Assistant Attorney General, for appellee.

MILLER, JUSTICE:

Donald Asa Harman was convicted in the Circuit Court of Randolph County of the offense of breaking and entering. He appeals on four grounds: (1) that he was denied the right to cross-examine the investigating officer regarding evidence that another person may have committed the offense; (2) that he was denied the right to call an alleged accomplice to the witness stand; (3) that the court refused to order the production of the psychiatric records of the State's principal witness; and (4) that the State introduced prejudicial evidence of oth-

er unrelated offenses. For the reasons set forth below, we reverse.

The breaking and entering occurred on January 17, 1978, at Teter's Grocery Store in Job, Randolph County. George Teter, the owner of the store, testified that he was awakened at 2:00 a.m. by the store burglar alarm. From his home, which is located diagonally across the road from the store, he observed a person leave the store and walk away down the road.

After notifying the State Police, Mr. Teter attempted to follow the suspect. He was accompanied by his daughter and son-in-law, Lora Mae and Michael Mullenex. Along the roadside, they found two garbage bags filled with merchandise from the store. A passing automobile aroused their suspicion, and the Mullenexes pursued it in their vehicle.

After following the automobile for some distance, Michael Mullenex fired several warning shots at the vehicle. The pursued vehicle stopped and one of its two occupants stepped out and fired shots in return. The Mullenexes then abandoned their pursuit, but had noted that the vehicle was a Pontiac, approximately a 1970 model, with Ohio license number K 494 H.

Cheryl Lou Musgrave, a former girlfriend of the defendant, testified at trial that the defendant had related to her his participation in the offense shortly after its commission. She reported this information to the police department in Youngstown, Ohio, where she was then residing.

Police investigation revealed that the defendant's wife owned an automobile similar to the one observed at the scene of the offense, except that his wife's car was a Buick rather than a Pontiac, and its Ohio license number was K 494 W, which differed by one letter from the license plate reported at the scene.

The defendant countered this evidence with an alibi defense and an attempt to discredit the reliability of

Cheryl Musgrave's testimony. The alibi defense was the testimony of the defendant and five witnesses to the defendant's presence in Youngstown at the time of the commission of the offense. The attack on Cheryl Musgrave's testimony consisted of eliciting a history of psychiatric illness and suggesting ill will as a motive to incriminate the defendant, based on his recent termination of their relationship and his reconciliation with his wife.

The jury returned a verdict of guilty of breaking and entering. In a subsequent recidivist proceeding, the defendant was sentenced to life imprisonment.

## I

The defendant's first claim on appeal is that he was denied the right to cross-examine the State's investigating officer regarding evidence that another person may have committed the offense. The matter arose after the State had called a Trooper Persinger, who testified regarding his investigation at the scene of the crime and his examination of the defendant's wife's vehicle. Counsel for the defendant chose to defer cross-examination and to call the officer later as a witness for the defense. Upon objection from the prosecuting attorney, the trial court explained that the defense had the option of immediate cross-examination or later direct examination of the officer as a hostile witness. Defense counsel chose direct examination as a hostile witness.[1]

During the presentation of the defense's case, Trooper Persinger was called as a hostile witness. The prosecuting attorney objected to treating the officer as a hostile

---

[1] The discussion of this point at trial was as follows:

"THE COURT: Well, it's a different rule of evidence, that's true, and it's a question of which one he wants to do, whether he wants to cross examine him now on what you've asked him or whether he wants to call him as a hostile witness and examine him under those rules.

"So, he can do either way he wants to.

"[DEFENSE ATTORNEY]: I'll call him tomorrow.

"THE COURT: All right."

witness without first establishing that he was, in fact, hostile.

In an *in camera* discussion, defense counsel withdrew his request to treat the officer as a hostile witness and offered to conduct a direct examination. The trial court then inquired into the subject matter of the intended questioning. Defense counsel explained that he intended to cover aspects of Trooper Persinger's investigation that suggested the commission of the offense by someone other than the defendant.[2] The trial court ruled that this line of inquiry was immaterial, and refused to permit Trooper Persinger to be questioned by defense counsel.

We need not resolve the issue of whether the defense attorney could cross-examine Trooper Persinger, either as a hostile witness or as his own witness. The essential claim of error lies in the trial court's decision that the line of inquiry sought to be pursued—that another person may have committed the crime—was not relevant.

The issue of the admissibility of evidence of the guilt of someone other than the defendant was recently brought before this Court in *State v. Frasher*, ____ W.Va. ____, 265 S.E.2d 43, 51 (1980), where the Court stated:

> "For evidence of the guilt of someone other than the accused to be admissible, it must tend to demonstrate that the guilt of the other party is inconsistent with that of the defendant. *United States v. Pannell*, 178 F.2d 98 (3d Cir. 1949), *cert. dismissed*, 339 U.S. 927, 94 L. Ed. 1348, 70 S.Ct. 626 (1950); *Blevins v. State*, 51 Ala. App. 214, 220-22, 283 So.2d 664, 669-71 (1973); *State v. Sturdivant*, 31 N.J. 165, 155 A.2d 771, 777-80 (1959), *cert. denied*, 362 U.S. 956, 4 L. Ed. 2d 873, 80 S.Ct. 873

---

[2] The planned line of questioning involved a police trace made of license number K 494 H, the number the State's witnesses identified at the scene of the crime, which revealed that it was registered to a Gary Hughes of Youngstown, Ohio. A further fact sought to be developed was that the officer had initially recommended that charges be filed against Hughes.

(1960); 1 J. Wigmore, *Evidence* § 139 (2d ed. 1940); *see Pettijohn v. Hall*, 599 F.2d 476, 480 (1st Cir. 1979), *cert. denied*, 444 U.S. 946, 62 L. Ed. 2d 315, 100 S.Ct. 308; *Commonwealth v. Graziano*, 368 Mass. 325, 329-30, 331 N.E.2d 808, 811 (1975)."

We held the exclusion of testimony in *Frasher* to be proper because it showed only that another individual was also embezzling automobile license tax funds, but this was not inconsistent with the defendant's separate embezzlement.

On the other hand, the defense in the present case was attempting to demonstrate not that someone committed the offense in addition to the defendant, but that someone committed it instead of him. In such a situation, the admissibility of testimony implicating another party as having committed the crime hinges on a determination of whether the testimony tends to directly link such party to the crime, or whether it is instead purely speculative. Consequently, where the testimony is merely that another person had a motive or opportunity or prior record of criminal behavior, the inference is too slight to be probative, and such evidence is therefore inadmissible. *E.g., People v. Romero*, 593 P.2d 365 (Colo. App. 1978); *Brown v. United States*, 409 A.2d 1093 (D.C. App. 1979); *Fortson v. State*, 379 N.E. 2d 147 (Ind. 1978); *State v. Williams*, 575 S.W.2d 838 (Mo. App. 1978); *State v. Gaines*, 283 N.C. 33, 194 S.E.2d 839 (1973). Where, on the other hand, the testimony provides a direct link to someone other than the defendant, its exclusion constitutes reversible error. *Pettijohn v. Hall*, 599 F.2d 476 (1st Cir. 1979), *cert. denied*, 444 U.S. 946, 62 L. Ed. 2d 315, 100 S.Ct. 308; *United States v. Robinson*, 544 F.2d 110 (2d Cir. 1976), *cert. denied*, 434 U.S. 1050, 54 L. Ed. 2d. 2d 803, 98 S.Ct. 901 (1978); *Commonwealth v. Graziano*, 368 Mass. 325, 331 N.E.2d 808 (1975); *State v. Hawkins*, 260 N.W.2d 150 (Minn. 1977); *People v. Archer*, 318 N.Y.S.2d 123, 35 A.D.2d 1014 (1970); *Commonwealth v. Boyle*, 470 Pa. 343, 368 A.2d 661 (1977); *see* 1 Wharton, *Criminal Evidence* § 195 (13th ed. 1972); 29 Am. Jur. 2d *Evidence* § 441 (1967).

We have adopted somewhat the same rules in *State v. Cremeans*, 62 W.Va. 134, 57 S.E. 405 (1907), where we stated in Syllabus Point 2:

> "Upon the trial of a person for murder threats of another person against the deceased are admissible if such threats are accompanied by proof tending to show the guilt of such other person or connecting him with the crime."

In *Cremeans*, the defendant sought to introduce evidence that a third party had threatened the victim about a month prior to his murder. We held that threats alone are not admissible evidence, absent some additional proof connecting the third party to the crime.

In *People v. Archer, supra,* the court concluded it was reversible error not to permit the defendant to show that some time after the crime, a man had been arrested about 150 miles from the scene of the crime, and his car bore the license number given by witnesses at the scene of the crime.

In *United States v. Robinson*, 544 F.2d 110 (2d Cir. 1976), *cert. denied*, 434 U.S. 1050, 54 L. Ed. 2d 803, 98 S.Ct. 901 (1978), the defendant sought to show that several witnesses identified the person in a bank surveillance photograph as an Eli Turner instead of the defendant. The bank had been robbed by three people and the identity of two was known. The defendant claimed this evidence not only tended to establish his innocence, but demonstrated that the state's witness had misidentified him. The court held the evidence to be admissible, stating:

> "It was entirely proper for Robinson to disprove the government's contention by proving that the third man was someone else. 1 J. Wigmore, Evidence § 34 (3d ed. 1940) [hereinafter cited as Wigmore]; 2 Wigmore § 413. If it was, then obviously Robinson was innocent. ..." [544 F.2d at 112-13].

In the present case, none of the State's witnesses who had been at the scene of the crime could give any de-

tailed description of the two persons seen leaving the scene. The only specific physical description was that both persons were of slight build. However, the defendant is 5'-10" tall and weighs over 200 pounds, and his alleged accomplice is also of large stature. The only identifying evidence from the scene of the crime was the description of an automobile bearing Ohio license number K 494 H. This license number was traced to a person other than the defendant, and one or more of the investigating officers had initially suspected this person of having committed the crime. In view of these facts, we believe the defendant should have been allowed to present this evidence, as it was a direct link to someone other than the defendant as the perpetrator of the crime.

To the extent that the State acquired evidence to abandon inquiry into this third person as a suspect, this evidence could be introduced by the State on rebuttal.

## II

The defendant's second ground for appeal is that he was denied the right to call his alleged accomplice to the witness stand. The defendant requested in a pretrial motion that the court subpoena Dennis Griffin, the alleged accomplice, for appearance at trial. In discussing the motion in a pretrial hearing, the court stated, "Well, he's in custody. You don't have to subpoena him." Thereupon, the defense attorney withdrew Griffin's name from his list of subpoenaed witnesses.

At trial, the defense counsel notified the court that it planned to call Griffin as a witness, and requested that he be brought from the jail where he was being detained in Harrison County. The court ruled that the defendant must first obtain the permission of Griffin's attorney, since Griffin, as an accomplice, could invoke Fifth Amendment protection against self-incrimination. The defendant explained that his interest in calling Griffin, regardless of Griffin's willingness to testify, was to show the jury that Griffin and the defendant did not match the physical description of the two persons observed at

the scene of the crime. The court maintained its requirement of the permission of Griffin's attorney, who subsequently withheld his permission, and Griffin was not brought to the trial. The error now urged is that defendant was denied the opportunity to present evidence on his own behalf.

The defendant's substantive claim hinges upon a determination of whether a witness may invoke the Fifth Amendment protection against self-incrimination and thus avoid having his physical appearance viewed by a jury. In *Holt v. United States*, 218 U.S. 245, 252-53, 54 L. Ed. 1021, 1030, 31 S.Ct. 2 (1910), Justice Holmes explained that:

> "[T]he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. ...."

This principle was more recently reasserted by the United States Supreme Court in *Schmerber v. California*, 384 U.S. 757, 763-64, 16 L. Ed. 2d 908, 916, 86 S.Ct. 1826, 1832 (1966):

> "It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. Boyd v. United States, 116 US 616, 29 L ed 746, 6 S Ct 524. On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect

or accused the source of 'real or physical evidence' does not violate it."

*See also United States v. Dionisio*, 410 U.S. 1, 35 L..Ed. 2d 67, 93 S.Ct. 764 (1973) (compelled use of suspect's voice for identification); *United States v. Wade*, 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S.Ct. 1926 (1967) (compulsory appearance of suspect in pretrial lineup).

Numerous state courts, following the guidelines established by the United States Supreme Court, have held that the constitutional right against self-incrimination does not extend to prevent the physical appearance of a person at trial. *Battese v. State*, 425 P.2d 606 (Alaska 1967); *LaBlanc v. People*, 161 Colo. 274, 421 P.2d 474 (1966); *State v. Anthony*, 332 So.2d 214 (La. 1976); *State v. Trueman*, 303 Minn. 426, 227 N.W.2d 824 (1975); *State v. Jackson*, 444 S.W.2d 389 (Mo. 1969), *cert. denied*, 397 U.S. 1014, 25 L. Ed. 2d 428, 90 S.Ct. 1247 (1970); *State v. Sanders*, 280 N.C. 67, 185 S.E.2d 137 (1971); *State v. Bowden*, 113 R.I. 649, 324 A.2d 631 (1974), *cert. denied*, 419 U.S. 1109, 95 S.Ct. 782, 42 L. Ed. 2d 805; *State v. Bauman*, 77 Wash.2d 938, 468 P.2d 684 (1970).

Article III, Section 5 of the West Virginia Constitution provides protection against self-incrimination in substantially the same language as its federal counterpart.[3] In Syllabus Point 3 of *State v. Fulks*, 114 W.Va. 785, 173 S.E. 888 (1934), this Court held that "[r]equiring a person charged with crime, at his trial, to stand in the court room for the purpose of permitting a witness to testify as to his identity, is not compelling him to give evidence against himself."

In the present case, the person being shielded from self-incrimination was a witness who, though co-indicted with the defendant, was not himself on trial. In light of the fact that freedom from self-incrimination does not

[3] Article III, Section 5 of the West Virginia Constitution provides in pertinent part, "nor shall any person, in any criminal case, be compelled to be a witness against himself." The relevant portion of the Fifth Amendment to the United States Constitution provides "nor shall [any person] be compelled in any criminal case to be a witness against himself."

protect a defendant from the compelled display of his physical appearance before the jury, there is no basis for extending broader protection to a witness. Since the witness could not claim the privilege at his own trial, he had no right to claim the privilege at another's trial.

Furthermore, unlike the circumstance involving a defendant at trial, a witness may not refuse to take the stand. As McCormick points out:

> "[B]y universal holding, one not an accused must submit to inquiry (including being sworn, if the inquiry is one conducted under oath) and may invoke the privilege only after the potentially incriminating question has been put. Moreover, invoking the privilege does not end the inquiry and the subject may be required to invoke it as to any or all of an extended line of questions." [McCormick, *Evidence* § 136 (2d ed. 1972)].

Thus, the witness here did not have the right to decline to take the stand. Under the Sixth Amendment to the United States Constitution and Article III, Section 14 of the West Virginia Constitution, the defendant has a constitutional right to have compulsory process for obtaining witnesses in his favor, and disallowance of a subpoena to bring a material witness before the jury constitutes reversible error. *Washington v. Texas*, 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S.Ct. 1920 (1967); *see State v. Haverty*, ____ W.Va. ____, 267 S.E.2d 727 (1980).

## III

The defendant's third ground of error is based on the trial court's refusal to allow subpoenas duces tecum for certain psychiatric records of the State's key witness, Cheryl Musgrave. By pretrial motion, the defendant sought the records from two hospitals in the State of Ohio. The court refused to issue the subpoenas,[4] but did permit the defendant to inquire on cross-examination

---

[4] The court's refusal to allow the subpoenas was apparently based on the fact that it did not consider that there had been a sufficient showing of the relevancy of the material sought.

into the fact that the witness had undergone psychiatric treatment.

Whether a subpoena duces tecum should be issued against a witness in a criminal case, particularly where the subpoena is to be served out of state, is a question that has received little discussion by this Court or courts elsewhere.

At common law, a subpoena duces tecum was available against third parties in both civil and criminal cases upon an adequate description of the material sought. Furthermore, it was necessary to show that the material was relevant to an issue in the case and that its proof was not otherwise practicably available. W. Va. Code, 57-5-4; 81 Am. Jur. 2d *Witnesses* § 14 (1976); 1 Wright, *Federal Practice and Procedure (Criminal)* § 274 (1969). In *Ebbert v. Bouchelle*, 123 W.Va. 265, 14 S.E.2d 614 (1941), we discussed, in the context of a civil case, the showing that must be made to obtain such a subpoena:

"There must be:
"(a) A description of the writing, the production of which is sought, sufficient to identify it.
"(b) A showing of the relevance and materiality of its contents to the matters in controversy in the pending case.
"(c) The fact that the proof is not otherwise practically available."[5]

*Bouchelle* involved W. Va. Code, 57-5-4, which authorizes in general terms a subpoena duces tecum.[6] We note that

---

[5] This quoted statement from *Bouchelle* is similar to the rule given in 1 Wright, *Federal Practice and Procedure (Criminal)* § 274, regarding a subpoena duces tecum in a criminal case:

"(1) That the documents are evidentiary and relevant; (2) That they are not otherwise procurable by the defendant reasonably in advance of trial by exercise of due diligence; (3) That the defendant cannot properly prepare for trial without such production and inspection in advance of trial and the failure to obtain such inspection may tend unreasonably to delay the trial; (4) That the application is made in good faith and is not intended as a general fishing expedition."

[6] *Bouchelle* also recognized that where the subpoena duces tecum is issued, the party against whom it is issued may challenge it.

W. Va. Code, 62-6A-1, *et seq.*, entitled "Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings," provides a means of securing an out-of-State witness. This act has been held to apply to a witness who is under a subpoena duces tecum. Annot., 44 A.L.R.2d 732, 736 (1955); *In re Bick*, 82 Misc.2d 1043, 372 N.Y.S.2d 447 (1975); *In re Saperstein*, 30 N.J. Super. 373, 104 A.2d 842 (1954), *cert. denied*, 348 U.S. 874, 99 L. Ed. 688, 75 S.Ct. 110. The Act also requires that the witness be necessary and material to the issues involved in the trial.

In regard to the issue of the necessity and materiality of a witness, a number of courts have recognized that there may be occasions where evidence of psychiatric disability may be introduced when it affects the credibility of a material witness' testimony in a criminal case.[7] Courts have generally required that before such psychiatric disorder can be shown to impeach a witness' testimony, there must be a further showing that the disorder affects the credibility of the witness and that the expert has had a sufficient opportunity to make and diagnosis of psychiatric disorder. *See United States v. Pacelli*, 521 F.2d 135 (2d Cir. 1975), *cert. denied*, 424 U.S. 911, 47 L. Ed. 2d 314, 96 S.Ct. 1106 (1976); *United States v. Barnard*, 490 F.2d 907 (9th Cir. 1973), *cert. denied*, 416 U.S. 959, 40 L. Ed. 2d 310, 94 S.Ct. 1976 (1974); *Bakken v. State*, 489 P.2d 120 (Alaska 1971); *People v. Neely*, 228 Cal. App. 2d 16, 39 Cal. Rptr. 251 (1964); *People v. Schuemann*, 190 Colo. 474, 548 P.2d 911 (1976); *State v. Heald*,

---

This procedure is essentially what is now embodied in Rule 45(b) of the Rules of Civil Procedure. Lugar & Silverstein, *West Virginia Rules*, pp. 358-59 (1960).

[7] The issue of psychiatric disability affecting the credibility of testimony must be distinguished from those situations where the witness, through a psychiatric disability, is totally incompetent to testify. In this latter situation, the court must determine initially if the witness lacks mental competency to testify. If the court so finds, the witness is barred from testifying. *State v. Comstock*, 137 W.Va. 152, 176, 70 S.E.2d 648, 661 (1952); McCormick, *Evidence* § 62 (2d ed. 1972); Weihofen, *Testimonial Competence and Credibility*, 34 Geo. Wash. L. Rev. 53, 56-57 (1965).

393 A.2d 537 (Me. 1978); *People v. Mandel*, 61 A.D.2d 563, 403 N.Y.S.2d 63 (1978); *State v. Stamm*, 16 Wash. App. 603, 559 P.2d 1 (1976); *Hampton v. State*, 92 Wis. 2d 450, 285 N.W.2d 868 (1979); Annot., 20 A.L.R.3d 684 (1968); McCormick, *Evidence* § 45 (2d ed. 1972); Note, *Psychiatric Impeachment Under Rule 608A*, 32 Okla. L. Rev. 401, 404-06 (1979).

In *State v. Driver*, 88 W.Va. 479, 107 S.E. 189 (1921), we upheld the refusal of the trial court to permit the defendant to introduce the testimony of a physician and a psychologist to the effect that a witness was a moron and therefore had impaired testimonial capacity. The basis for this conclusion was their observation of the witness while she testified at trial. The opinion noted that the period and manner of their observation was no different than was available to the jury.

Earlier, in *State v. Perry*, 41 W.Va. 641, 651, 24 S.E. 634, 637 (1896), we discussed a related issue of whether an expert could testify as to the hallucinatory effect that might occur to a witness who had been administered a mixture of chloroform and ether. We held it was error for the trial court to exclude this testimony.

From the rather meager record in the present case, we cannot say that the trial court abused its discretion. However, upon retrial the defendant would have the right to renew the motion under the guidelines set out herein.

## IV

The final ground of error is a claim that the court permitted the State on redirect examination of its key witness, Cheryl Musgrave, to introduce evidence of an unrelated crime.

At defendant's request, the trial court initially had ruled that certain matters relative to other crimes contained in the statement of Cheryl Musgrave could not be introduced in her testimony. On cross-examination, the defense attorney attempted to impeach Miss Musgrave by seeking to have her admit that the reason she had

provided damaging testimony against the defendant was that she was angry at him for terminating their relationship and returning to his wife, which she denied.

On redirect examination, the prosecutor asked Miss Musgrave to explain why she had become hostile to the defendant. She stated that he had told her that he was having sexual relations with his 11-year-old stepdaughter, and that this had offended her to the extent that she contacted the police.

In *State v. Haverty*, ___ W.Va. ___, 267 S.E.2d 727 (1980), we discussed in some detail the admissibility of evidence of other crimes, and stated: "This perennial ground of error is virtually impossible to collate because of the almost infinite variety of its occurrence at trial." 267 S.E.2d at 733. We also pointed out that *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974), sets the traditional rule barring evidence of other crimes and the exceptions to the rule.

Here, we deal with a matter outside the normal exceptions set out in *Thomas*.[8] The defense attorney's cross-examination sought to discredit the witness' testimony by showing that her motive for giving the testimony rested on anger against the defendant for leaving her. The prosecutor countered by questioning her about her actual motive. The courts which have considered this question have held that where cross-examination of a witness is directed at developing his bias or hostility against a party to the case, the party offering the witness is entitled to rehabilitate him. In this connection,

---

[8] The exceptions to the general rule prohibiting evidence of other crimes are given in Syllabus Point 12 of *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974):

"The exceptions permitting evidence of collateral crimes and charges to be admissible against an accused are recognized as follows: the evidence is admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of the person charged with the commission of the crime on trial."

the underlying reasons for the bias or hostility may be shown if they legitimately serve to rehabilitate the witness and are not simply used as a means of introducing inflammatory matter into the case. *United States v. Kimbrough*, 528 F.2d 1242 (7th Cir. 1976); *Beck v. United States*, 317 F.2d 865 (5th Cir. 1963), *cert. denied*, 375 U.S. 972, 11 L. Ed. 2d 419, 84 S.Ct. 480 (1964); *Bracey v. United States*, 142 F.2d 85 (D.C. Cir. 1944), *cert. denied*, 322 U.S. 762, 88 L. Ed. 1589, 64 S.Ct. 1274; *United States v. Panetta*, 436 F. Supp. 114 (E.D. Pa. 1977), *aff'd*, 568 F.2d 771 (3rd Cir. 1978); *Meeker v. State*, 395 N.E.2d 301 (Ind. App. 1979); *People v. Burke*, 52 Ill. App. 2d 159, 201 N.E.2d 636 (1964); *State v. Austin*, 27 N.C. App. 395, 219 S.E.2d 279 (1974). The issue often turns on the severity of the impeachment versus the inflammatory nature of the rehabilitation evidence. If the impeachment is only slight and the rehabilitative evidence is highly inflammatory, the inflammatory evidence should not be permitted.

In the present case, we do not believe that the trial court abused its discretion in permitting the State's witness to explain on redirect examination the real reasons for her reporting the defendant to the police. The impeachment of her testimony was rather damaging in its thrust that she was jealous and angry over the defendant's return to his wife. The explanation offered did bring in the inflammatory statement that the defendant had admitted to sexual relations with his stepdaughter, but the incident was not elaborated upon by the witness, nor was it subsequently emphasized by the State in its argument of the case.

For the foregoing reasons, we reverse the judgment of the trial court and remand the case for retrial. In light of the reversal of the defendant's third felony conviction, the recidivist life sentence is also reversed.

*Reversed and remanded.*