# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**June 3, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**State of West Virginia**
**Plaintiff Below, Respondent**

**vs)  No. 14-0862** (Harrison County 14-F-87-2, Marion County 12-F-143)

**Michael Palmer**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Michael Palmer, by counsel Scott A. Shough and Ashley Joseph Smith, appeals his March 26, 2014, conviction of the charge of first-degree murder, with a recommendation of mercy. Respondent State of West Virginia, by counsel Shannon Frederick Kiser, filed a response in support of the circuit court's order. Petitioner argues that the circuit court erred in allowing the admission of certain evidence at trial; in denying his request to compel the trial testimony of his co-defendant; in denying his motion to dismiss the indictment returned against him; in denying his motion for new trial; and in instructing the jury.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On December 10, 2011, petitioner fatally shot his father-in-law within seconds of the victim's arrival at petitioner's home.[1] Hours before the shooting, the victim left a voicemail message on petitioner's answering machine indicating that he was coming to petitioner's residence that night to discuss their familial discord, and that he and petitioner were going to "talk it out like men."[2] Petitioner contends the shooting of the victim was done in self-defense. Petitioner alleges that, on the night of the shooting, the victim kicked the rear door of petitioner's home and entered the home "in a violent manner," prompting petitioner to shoot him twice.

---

[1]The home in which petitioner lived sat adjacent to the victim's home.

[2]Approximately one month prior to the shooting, petitioner called 911 and advised that the victim called him, and threatened to kick down the door to his home and fight him. In making the 911 report, petitioner stated that he was not afraid of the victim, but simply wanted to "make a record of" the victim's threat.

1

However, per the State's witnesses, the angle of the shot and location of the victim's gunshot wound suggests that petitioner shot the victim in the side as he was retreating from petitioner's home.

On June 6, 2012, a Marion County grand jury indicted petitioner (and his wife – the victim's daughter) on one count of first-degree murder, in violation of West Virginia Code § 61-2-1. Petitioner was imprisoned on June 6, 2012, and remained incarcerated during the pendency of his case.[3] Petitioner and his wife were scheduled to be tried separately, with petitioner's trial to proceed first. During the pretrial proceedings, petitioner's wife was subpoenaed by both petitioner and the State to testify at petitioner's trial. The wife's counsel advised that she would assert her Fifth Amendment right against incrimination if asked directly about the shooting incident. Ultimately, the circuit court ordered that petitioner's wife was not required to take the stand at trial, when she intended to assert her Fifth Amendment rights before the jury.

In the month before the scheduled trial date, the circuit court granted a motion for change of venue (given the media attention surrounding the case and concerns regarding the ability to obtain an impartial jury panel). Venue for the trial was transferred to Harrison County and jury selection began on March 10, 2014. A jury was empaneled that same day and trial commenced the following day. On March 26, 2014, on the eleventh day of trial, petitioner was found guilty of first-degree murder with a recommendation of mercy. On May 30, 2014, petitioner was formally sentenced to life in prison with a recommendation of mercy. Petitioner filed post-trial motions on April 7, 2014.[4] A hearing was held on those motions on May 15, 2014. By order entered July 31, 2014, the circuit court denied petitioner's motions. Petitioner now appeals his conviction, and the circuit court's denial of his post-trial motions.

In support of his petition for appeal, petitioner alleges six assignments of error. First, petitioner asserts that the circuit court committed reversible error in failing to compel the testimony of petitioner's wife at his trial. Second, petitioner contends that the circuit court improperly instructed the jury. Third, petitioner argues that circuit court erred in failing to

_____

[3]While petitioner was incarcerated, a jailhouse informant disclosed to the State that the petitioner "confessed" to him that the shooting was intentionally planned because the victim was dissipating his assets, which petitioner and his wife hoped to inherit.

[4]In his post-trial motions, petitioner sought relief on the following grounds: 1) the verdict returned against him was against the weight of the evidence; 2) the verdict was based on an uncorroborated "jailhouse" confession; 3) the circuit court improperly refused to permit testimony of petitioner's expert on the issue of the effects of long term drug use; 4) the circuit court permitted introduction of 404(b) evidence; 5) State's Exhibit No. 154, though inadmissible, was admitted into evidence; 6) the circuit court refused to allow testimony of police officer regarding the inconsistent statement of a witness; 7) the circuit court refused to require testimony of co-defendant; 8) the circuit court gave an improper self-defense instruction; 9) prosecutorial misconduct; and 10) the circuit court refused to allow the testimony of Timothy Biggs and refused to admit into evidence letters authored by the co-defendant.

dismiss the indictment returned against petitioner. Fourth, petitioner contends that the circuit court erred in allowing the admission of State's Exhibit No. 154 at trial. Fifth, the petitioner argues that the circuit court erred in allowing the admission of 404(b) evidence at trial. Sixth, petitioner contends that the circuit court erred in denying petitioner's post-trial motions given that the verdict returned by the jury was against the weight of the evidence at trial.

As to his first assignment of error, petitioner argues that the circuit court erred in refusing to compel the testimony of his co-defendant wife. In *State v. Herbert*, 234 W.Va. 576, 583-84, 767 S.E.2d 471, 478-79 (2014), we noted that

> "[t]he constitutional right against self-incrimination does not extend to prevent the physical appearance of a person at trial." Syl. Pt. 2, *State v. Harman*, 165 W.Va. 494, 270 S.E.2d 146 (1980). Ordinarily a non-party witness may not refuse to take the stand in a criminal trial by simply asserting the constitutional right against self-incrimination. "'(B)y universal holding, one not an accused must submit to inquiry (including being sworn, if the inquiry is one conducted under oath)[.]'" *Id.*, 165 W.Va. at 504, 270 S.E.2d at 153 (quoting McCormick on Evidence § 136 (2d ed. 1972)).

Further, in *Herbert*, we ruled that

> [i]n a criminal trial, when a non-party witness intends to invoke the constitutional privilege against self-incrimination, the trial court shall require the witness to invoke the privilege in the presence of the jury. The constitutional privilege against self-incrimination may only be invoked when a witness is asked a potentially incriminating question.

Syl. Pt. 2, in part (citations omitted).

In the case *sub judice*, petitioner contends that the circuit court's failure to force his co-defendant to invoke her Fifth Amendment privilege against self-incrimination in front of the jury was a violation of his Sixth Amendment right to compulsory process.[5] The State counters that petitioner's claims regarding his co-defendant's invocation of her Fifth Amendment protections during trial is meritless when viewed under the lens of either Fifth or Sixth Amendment consideration. Based upon our review of the particular facts of the instant case, we find that the circuit court did not commit error in failing to compel the trial testimony of petitioner's wife.

---

[5]Petitioner gave notice of his intention to call his wife to testify at trial regarding petitioner's interactions with the victim, the condition of the door through which the victim entered petitioner's residence on the evening of the shooting, and "all of the circumstances surrounding the shooting."

Here petitioner's co-defendant, unlike the witness at issue in *Herbert*, was separately charged with victim's murder.[6] Her case was set to proceed to trial on a date following petitioner's trial. She was called to testify at petitioner's trial and, outside of the presence of the jury, invoked her Fifth Amendment right to not testify.[7] If petitioner's wife had agreed to testify, she would have been subject to cross-examination. The circuit court reasoned that it would be "nearly impossible to confine cross-examination" of the co-defendant in a way that would not prejudice her. Under these limited facts, we find no error with the circuit court's ruling.

Next, petitioner contends that the circuit court improperly instructed the jury on the law of self-defense and the "castle" doctrine.[8] We have held that ". . . the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo*." Syl. Pt. 1, in part, *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996).

A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific

_____

[6]We find that the facts presented in this case are analogous to the facts presented in *State v. Whitt*, 220 W.Va. 685, 649 S.E.2d 258 (2007), which addressed a situation where a co-accused refused to take the witness stand in the jury's presence. In such situations, we found that the trial court has discretion to exclude a witness from the jury's presence. In *Whitt*, we held that the trial court's discretion on this issue should be guided by whether the defendant would by unfairly prejudiced if the witness did not take the stand to invoke the privilege in the jury's presence. Syl. Pt. 7., *id.* In the instant case, we find that petitioner failed to establish that he would be unfairly prejudiced if his co-defendant did not take the witness stand. The subsequent resolution of the co-defendant's criminal proceeding shows that her trial testimony would have been inculpatory and would have damaged petitioner's claim of self-defense.

[7]The circuit court noted that the co-defendant's invocation of her Fifth Amendment right was done outside of the presence of the jury to ensure that no undue prejudicial testimony was heard by the jury; and further, so the court could ascertain that the co-defendant understood her rights and that she knowingly, voluntarily, under the advice of her counsel, and of her own free will, chose not to testify.

[8]Our precedent in self-defense cases clearly states that where an unlawful intrusion has occurred in the sanctity of one's home, an occupant of the home has no duty to retreat. Generally, described as the "castle doctrine," "castle" rule or "home" rule, our precedent succinctly states that "[a] man attacked in his own home by an intruder may invoke the law of self-defense without retreating." Syl. Pt. 4, *State v. Preece*, 116 W.Va. 176, 179 S.E. 524 (1935).

wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

Syl. Pt. 4, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

The circuit court herein instructed the jury on both self-defense and the castle doctrine. Petitioner contends that providing such instructions misled the jury, as there was no evidence that the events in question occurred anywhere other than the home of petitioner. Additionally, petitioner contends that failing to provide the specific direction to the jury that the porch of petitioner's home was part of his castle was reversible error. Respondent argues that the circuit court did not abuse its discretion or misstate the law by juxtaposing instructions of traditional self-defense and the castle doctrine. Based upon our review of the record herein, we find no error. The circuit court's instructions were a correct statement of law for both traditional self-defense and the castle doctrine. *State v. Harden*, 223 W.Va. 796, 679 S.E.2d 628 (2009); *State ex rel. Adkins v. Dingus*, 232 W.Va. 677, 683, 753 S.E.2d 634, 640 (2013).

In his third assignment of error, petitioner argues that the circuit court erred in failing to dismiss the indictment retuned against petitioner based upon prosecutorial misconduct before the grand jury. "This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*." Syl. Pt. 1, in part, *State v. Grimes*, 226 W.Va. 411, 701 S.E.2d 449 (2009). Here, petitioner alleges that the trial court and the State committed an error of constitutional magnitude by giving the grand jury an incorrect instruction on the law of self-defense. Respondent argues that there was no error, as the grand jury was properly instructed as to the applicable law. Following our review of the record herein, as the grand jury was properly instructed as to the law, we find no error in the circuit court's failure to dismiss the indictment returned against petitioner.

Next, petitioner argues that the circuit court erred in allowing the admission of State's Exhibit No. 154 – an e-mail containing a reference to a Facebook post (and comments about the post) which purportedly reflected petitioner's character trait of threatening those adverse to him.[9] With respect to the admission of evidence, this Court has held that "'[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.' Syllabus point 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955), *overruled on other grounds*, *State ex rel. R.L. v. Bedell*, 192 W.Va. 435, 452 S.E.2d 893 (1994)." Syl. Pt. 1, *State v. Calloway*, 207 W.Va. 43, 528 S.E.2d 490 (1999). Petitioner argues that the circuit court abused its discretion by allowing this exhibit to be admitted at trial despite the fact that no foundation was

---

[9]This document was provided to the State by a "concerned citizen," and contained the following statement from petitioner "[s]ee, I don't make meaningless threats. I have a mental list of folks that did my wife and I wrong and I patiently and meticulously wait for my moment to strike those who made the list."

5

made to support it, as required by Rule 901 of the West Virginia Rules of Evidence.[10] The State argues that the trial court did not err in permitting the admission of this exhibit as an appropriate analysis of the exhibit was completed by the court.[11]

In the instant case, the circuit court completed an appropriate analysis of the authenticity of the document prior to its admission at trial. Additionally, the circuit court, prior to admission of the document, conducted an in camera review of the exhibit and other corresponding documents subpoenaed from Facebook and jail telephone calls between petitioner and his family members, which substantiated the information contained within the exhibit. Moreover, the circuit court permitted petitioner to proffer the testimony of an expert witness regarding the ability to easily fabricate a Facebook page to rebut this exhibit. Accordingly, we agree with the circuit court's ruling and find no clear error or abuse of discretion in permitting the admission of State's Exhibit No. 154.

In his next assignment of error, petitioner contends that the circuit court improperly allowed the admission of 404(b) evidence. In syllabus point two, in part, of *State v McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994), we held, in part, that

> [w]here an offer of evidence is made under rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting

---

[10]Rule 901(a) of the West Virginia Rules of Evidence provides that the "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."

[11]The only evidence proffered to establish a foundation for this exhibit was the testimony of a witness who conducted a conversation with petitioner on Facebook and believed, without question, that the statement generated from petitioner based on the "manner of speech used in the posts," recognition of the Facebook profile picture as being the petitioner's profile picture, and the fact that the content of the conversation was such that only the petitioner (and the witness) would have knowledge of it.

instruction should be given at the time the evidence is offered[.]

Further, in *State v. LaRock,* 196 W.Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996), we held that the standard of review

> for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

"This Court reviews disputed evidence in the light most favorable to its proponent, [in this case, the State,] maximizing its probative value and minimizing its prejudicial effects." *Id.*, 196 W.Va. at 312, 470 S.E.2d at 631; s*ee also McGinnis*, 193 W.Va. at 159, 455 S.E.2d at 528. Here, petitioner argues that the circuit court improperly admitted the 404(b) testimony of two witnesses. The first witness testified that in the several months before the shooting, petitioner called him names and would "stick his finger out the window like he was pointing a gun at me and drive by." This witness further testified that petitioner and his co-defendant were taking financial advantage of the victim. The second witness, a close friend of the victim, testified that the victim supported the co-defendant's failing business, that petitioner did not have a good record of working, and that petitioner threatened the victim during an argument with a finger gesture. Petitioner contends that the testimony of these witnesses was admitted without the required hearing under *McGinnis*.

Respondent counters that the circuit court properly admitted evidence of petitioner's antagonistic displays to the victim as intrinsic evidence, rather than prior bad acts as contemplated by Rule 404(b). Respondent further notes that the circuit court conducted an in camera hearing regarding State's Exhibit No. 154, which was propounded by the first witness. Based on our review of record herein, we find that the circuit court did not commit error with respect to the admission of this evidence. We have previously held that "'[o]ther act' evidence is intrinsic when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' . . . ." *State v. Harris*, 230 W.Va. 717, 721, 742 S.E.2d 133, 137 (2013). We agree with the State that the gestures and "displays" attributable to petitioner about which these two witnesses testified do not constitute other bad acts and the analysis under Rule 404(b) is unnecessary. The determination of the relevancy of this evidence by the circuit court was sufficient to warrant the admission of the evidence under Rules 401 and 403 of the West Virginia Rules of Evidence.

In his final assignment of error, petitioner argues that the circuit court erred in denying petitioner's motion for new trial given that the verdict returned by the jury was against the weight of the evidence. In *Guthrie*, we held that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted a

trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1.

In *Guthrie*, we further held that

[a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. Pt. 3, in part.

Petitioner argues that there was no evidence presented at trial to establish that petitioner's murder of the victim was premeditated. Respondent argues that the evidence proffered at trial was sufficient to sustain petitioner's conviction of first-degree murder. Based upon our review of the record herein, we find no error in the circuit court's denial of petitioner's motion for new trial on this ground. Evidence was proffered at trial that petitioner was aware the victim was coming to his residence on the evening of the shooting and that the fatal shots were fired within seconds of the victim's arrival at petitioner's residence. As the evidence presented at trial was sufficient to rationally prove beyond a reasonable doubt that petitioner's murder of the victim was premeditated. Petitioner has not met the significantly high burden to prove that his conviction was based on insufficient evidence.

For the foregoing reasons, we affirm petitioner's March 26, 2014, conviction of the charge of first-degree murder, and the circuit court's July 31, 2014, denial of petitioner's post-trial motions, including his motion for a new trial.

Affirmed.

**ISSUED:** June 3, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis

Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II