# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs)  No. 16-0497**  (Monongalia County 15-F-12)

**Brian D. Greeson,**
**Defendant Below, Petitioner**

**FILED**

**May 19, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Brian D. Greeson, by counsel Jason D. Parmer, appeals the April 27, 2016, order of the Circuit Court of Monongalia County that denied his motion for a new trial and sentenced him to a term of forty years in prison for the offense of second-degree murder. The State of West Virginia, by counsel Zachary Aaron Viglianco, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner lived in an apartment with his co-defendant, Charles Shaffer, and the victim, Leslie Fields.[1] On December 15, 2014, while responding to a report of a potential burglary, the Morgantown Police Department encountered petitioner pounding on the locked door to his apartment in an effort to get in. Petitioner told the responding police officers that something "bad" was going on in the apartment, and that he did not have a key with him. The officers observed significant amounts of blood on petitioner's clothes and body.

The officers knocked repeatedly on the door but there was no response. They eventually obtained a key from the landlord and gained entrance to the apartment where they discovered the victim's body. The autopsy revealed that the victim's body had thirty-nine stab wounds and twenty incised wounds and that the likely cause of death was blunt force trauma that caused a brain stem hemorrhage. Two knives were found at the scene, one next to the body and one

---

[1] All three men were previously homeless and living on the streets of Morgantown, West Virginia. They were placed in the apartment by local organizations that procure housing for the homeless. The victim was placed in the apartment in October of 2014.

1

underneath it.[2]

On January 9, 2015, petitioner and Shaffer were jointly indicted in the Circuit Court of Monongalia County on one count each of first-degree murder and conspiracy to commit murder. On September 21, 2015, Shaffer entered into a plea agreement with the State of West Virginia in which he agreed to plead guilty to one count of second-degree murder, a lesser-included felony in count one of the indictment; the State agreed to dismiss the conspiracy charge.

Petitioner was tried before a jury. Prior to trial, the State filed a motion in limine to prohibit petitioner from introducing evidence of Shaffer's guilty plea on the ground that it was not relevant to petitioner's case. Petitioner filed a response. At a subsequent hearing, the circuit court granted the State's motion. However, the court advised the parties that if, at trial, the State were to open the door to such evidence, the court would allow petitioner to introduce it.

Petitioner's defense at trial was that Shaffer alone killed Leslie Fields. Petitioner testified that he had drank heavily all day on the day of the murder and that he had gone upstairs to his room in the apartment to sleep. He testified that he awakened when Shaffer yelled for him and that it was then that he saw the victim lying on the floor. Petitioner testified that he became covered in the victim's blood when he tried to move the body. According to petitioner, Shaffer asked him to dispose of a bicycle part that Shaffer used to hit the victim on the head. Petitioner claimed that he encouraged Shaffer to go to the police to tell them what happened.[3] Petitioner placed the item in a backpack and disposed of it in a dumpster in downtown Morgantown. It was when he returned to his locked apartment that he encountered the police. Petitioner was taken to the police station where petitioner initially told police that someone other than Shaffer killed the victim.[4] Petitioner was also recorded while he sat alone in the police interview room, saying to himself, "man, I locked the f*****g door," and "I wasn't trying to kill him." Also at the police station, when petitioner was told that he was being charged with first degree murder, he stated, "that's premeditated, there wasn't nothing premeditated or none of that, there goes my life, huh."[5]

---

[2] No fingerprints were detected on either knife.

[3] Shaffer eventually went to the police station, arriving there with blood on his clothing and body, advising officers that "his buddy" was dead, but failing to then tell the officers that he had killed the victim.

[4] A neighbor whose apartment shared a wall with petitioner's testified that, earlier in the evening, she heard loud voices coming from petitioner's apartment, as if the occupants were arguing.

[5] The police officer who transported petitioner and Shaffer from the police station to the regional jail testified that, during the ride, petitioner stated to Shaffer that "there was no way that he could get pinned with a murder, that there was no way premeditation or conspiracy could be proven, there was no way first-degree murder would come out of it and he was going to push for self-defense." The officer further testified that, according to petitioner, petitioner, Shaffer, and (continued . . .)

On February 5, 2016, petitioner was convicted of the offense of second degree murder. By order entered April 27, 2016, the circuit court denied petitioner's motion for judgment of acquittal or, alternatively, for a new trial, and sentenced petitioner to a term of forty years in prison. This appeal followed.

Petitioner's case is before this Court on appeal from an order denying his motion for a new trial or, in the alternative, a judgment of acquittal. This Court applies the following standard when reviewing a circuit court decision denying a new trial:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance,* 207 W. Va. 640, 535 S.E.2d 484 (2000).

On appeal, petitioner argues that the circuit court violated his constitutional right to present a defense when it excluded evidence of his co-defendant's guilty plea to second degree murder.[6] Relying on syllabus point one, in part, of *State v. Harman*, petitioner argues that evidence of another perpetrator is relevant and admissible when it "tends to directly link such party to the crime . . . . [If] the testimony provides a direct link to someone other than the defendant, its exclusion constitutes reversible error." 165 W. Va. 494, 270 S.E.2d 146 (1980). According to petitioner, Shaffer's guilty plea was critical to the issue of petitioner's guilt as it was definitive evidence that Shaffer killed the victim and "is also circumstantial evidence probative of [petitioner's] theory that Shaffer acted alone." Petitioner argues further that the State opened the door to evidence of Shaffer's guilty plea but that the circuit court, nonetheless, refused to admit such evidence.

It is well settled that "'[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk,* 171 W. Va. 639, 301 S.E.2d 596, 599 (1983)." Syl. Pt. 2, *State v. Peyatt*, 173 W. Va. 317, 315 S.E.2d 574 (1983). As we explained in *State v. Wakefield*,

---

the victim had gotten into an argument at the apartment that had "got[ten] out of hand" and that the argument "was over chores and drugs."

[6] *See* Syl. Pt. 3, in part, *State v. Jenkins,* 195 W. Va. 620, 466 S.E.2d 471 (1995) (holding that "a trial judge may not make an evidentiary ruling which deprives a criminal defendant of certain rights, such as the right . . . to offer testimony in support of his or her defense . . . which [is] essential for a fair trial pursuant to the due process clause found in the Fourteenth Amendment of the *Constitution of the United States* and article III, § 14 of the *West Virginia Constitution*.").

3

[o]nly rarely and in extraordinary circumstances will we, from the vista of a cold appellate record, reverse a circuit court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect.

Our review, however, must have some purpose and that is why we review under an abuse of discretion standard. In general, an abuse of discretion occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the circuit court makes a serious mistake in weighing them.

236 W. Va. 445, 452–53, 781 S.E.2d 222, 229–30 (2015), *cert. denied sub nom.* 137 S. Ct. 33, 196 L. Ed. 2d 46 (2016) (quoting *Gentry v. Mangum,* 195 W. Va. 512, 520 n.6, 466 S.E.2d 171, 179 n.6 (1995).).

Based upon on our review of the record and the arguments of counsel, we find no error. In syllabus point five of *State v. Frasher*, this Court held that "[f]or evidence of the guilt of someone other than the accused to be admissible, it must tend to demonstrate that the guilt of the other party is inconsistent with that of the defendant." 164 W. Va. 572, 265 S.E.2d 43 (1980), *overruled on other grounds, State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). *See Frasher*, 164 W. Va. at 587, 265 S.E.2d at 51-52 (holding that the exclusion of testimony was proper because it showed only that another employee was also embezzling, which was not inconsistent with defendant's separate embezzlement.).

Contrary to petitioner's theory at trial, evidence of Shaffer's guilty plea would not have tended to demonstrate that Shaffer's guilt is inconsistent with that of petitioner or, as petitioner has consistently maintained, that Shaffer acted alone. Indeed, the evidence showed that petitioner was covered in blood when the police encountered him outside the apartment he shared with the victim and where the victim's body was found; that petitioner was present in the apartment when the victim was killed; that two knives were found by the victim's body; that petitioner initially lied to police regarding the circumstances of the murder (i.e., telling police that an unidentified third person killed the victim) and the fact that he disposed of the bicycle part used in connection with the murder; and that petitioner was seen and heard in surveillance video lamenting that he locked the apartment door, that he was not trying to kill the victim, and that the victim's death was not premeditated. Given this evidence, it is clear that evidence of Shaffer's guilty plea would not have tended to demonstrate that Shaffer's guilt is inconsistent with that of petitioner. In other words, Shaffer's guilty plea would not have shown that someone *other than* petitioner killed the victim; rather, it would have shown that someone, *in addition to* petitioner, killed the victim.

Petitioner's argument that this evidence was relevant and admissible under *Harman* is misplaced. In *Harman*, the defendant was tried and convicted of breaking and entering. The defendant attempted to introduce evidence showing "not that someone committed the offense in addition to the defendant, but that someone committed it instead of him." 165 W. Va. at 499, 270 S.E.2d at 150. It was under such a circumstance that this Court held that evidence implicating another person is admissible if it "provides a direct link to someone other than the defendant . . . ." *Id.* Evidence of Shaffer's guilty plea would not have shown, under the facts presented, that Shaffer alone killed the victim, but would have instead demonstrated that Shaffer and petitioner acted in concert. The evidence was properly excluded as the probative value of Shaffer's guilty

4

plea would have been "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and/or] misleading the jury," W.Va.R.Evid. 403, where, as here, two individuals were accused of killing the victim but only one was on trial. It would have confused and misled the jury to introduce evidence of Shaffer's guilty plea under such circumstances, and would have unfairly prejudiced the State's case.

Petitioner next argues that the State "opened the door" to Shaffer's guilty plea and that the circuit court erred in refusing to allow petitioner to introduce evidence of the same. "The curative admissibility rule allows a party to present otherwise inadmissible evidence on an evidentiary point where an opponent has 'opened the door' by introducing similarly inadmissible evidence on the same point." *Guthrie*, 194 W. Va. at 664, 461 S.E.2d at 170, syl. pt. 10, in part. Petitioner contends that the State opened the door by offering into evidence pictures of Shaffer with the victim's blood all over his body and clothing; Shaffer's bloodied glove, which was found on a wall near the crime scene; surveillance video of Shaffer by the wall where the glove was found; and evidence that both petitioner and Shaffer were arrested for first degree murder and conspiracy. According to petitioner, the door was opened further when the State asked petitioner whether he was "the only person that could get in trouble here today," when he "figure[d] out [Shaffer] didn't confess."[7] Petitioner argues that the circuit court erred in concluding that such evidence did not open the door to Shaffer's guilty plea and that the curative admissibility rule did not apply.

The record on appeal reveals that, although the circuit court refused to allow evidence of Shaffer's guilty plea, it encouraged petitioner to call or cross-examine witnesses—including and especially Shaffer—who could support petitioner's defense theory that Shaffer alone killed the

---

[7] The context of the State's questioning of petitioner in this regard is as follows:

Q. Mr. Greeson, today you're the only person that could get in trouble here today; right?
A. Oh, I understand this, sure.
Q. You're the only person who has an interest in the outcome of this case; correct:
A. I don't think it's very interesting, but, yeah.
Q. And you have already made it pretty clear that you would lie to get someone to leave you alone –
A. Okay.
Q. –to leave the police station that night, to make sure you're not in trouble.
A. Yeah.
Q. Isn't that what you're doing here today?
A. No. That's not what I'm doing here today. I'm here – I'm here baring my soul and telling the exact truth, okay. . . . You know, I tell you what, I did not kill Leslie Fields or harm him.
Q. When did you figure out Chuck didn't confess?
A. When did I figure out Chuck didn't confess?
Q. When did you figure out Chuck was getting arrested too?
A. Not till after I was arrested.

victim.[8] Importantly, therefore, the circuit court did not foreclose petitioner from introducing evidence that Shaffer killed the victim and that petitioner did not participate in the crime. Thus, we conclude that the circuit court did not abuse its discretion in finding that the State did not open the door to Shaffer's guilty plea and that the curative admissibility rule did not apply.[9]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 19, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[8] Petitioner did not call Shaffer as a trial witness.

[9] Although petitioner also argues that the exclusion of Shaffer's guilty plea was not harmless error, we need not address this assignment of error because, as we determined above, the circuit court did not commit any error in this regard.